State v. Newman.

THE STATE OF NEVADA, RESPONDENT, v. WILLIAM M. NEWMAN, APPELLANT.

LARCENY OF PROPERTY STOLEN IN AND BROUGHT FROM ANOTHER STATE. If a person commits larceny in one country or state and carries the goods stolen into another country or state and there makes any removal or asportation of them, having in his mind the intent to steal, he may be properly indicted for larceny of them in the latter locality.

MERE POSSESSION WITH FELONIOUS INTENT OF PROPERTY STOLEN IN ANOTHER STATE NOT LARCENY. In a trial for larceny of property, which had been stolen in another state and brought into this State, the court instructed the jury that if the accused was in possession of the property in this State with a felonious intent to steal, take and drive it away, it should convict, though the original taking away had been in another state: Held, error.

NO LARCENY WITHOUT ACT AS WELL AS INTENT. Mere possession of another's property, with intent to steal it, is no larceny, until intent is ripened into act.

APPEAL from the District Court of the Seventh Judicial District, Lincoln County.

State *v.* Newman.

Defendant was indicted, with Vincent Moore and Robert McCausland, of the crime of grand larceny, alleged to have been committed in Lincoln County, Nevada, on or about May 15, 1872, by stealing a cow and heifers, the property of John Pulcifer, and a heifer, the property of the Hebron Stock Association. It appeared that the cattle described had been pasturing on a ranch in Utah Territory, from which they were stolen and driven to a ranch in Meadow Valley, Lincoln County, where they were found.

Defendant alone appeared for trial. Having been convicted and his motion for a new trial overruled, he was sentenced to imprisonment at hard labor in the State prison for the term of three years. He appealed from the judgment.

*Pitzer & Corson, Bishop & Sabin* and *J. C. Foster,* for Appellant.

I.   No indictment for larceny lies in the courts of this State where the property has been stolen in another state or territory, and brought into this State. *State* v. *Brown,* 1 Hayward, (N. C.) 116; *People* v. *Gardner,* 2 Johns. 478; *People* v. *Schenck,* 2 Johns. 479; *Simmons* v. *Com.,* 5 Binn. 617; *Simpson* v. *State,* 4 Humph. (Tenn.) 456; Dissenting Opinion in *Hamilton* v. *State,* 11 Ohio, 435; *Commonwealth* v. *Upsichord,* 3 Gray, 434.

II.   Our criminal code was copied from the criminal code of New York, as it existed when the above cited cases of *People* v. *Gardner* and *People* v. *Schenck* were decided. Does this not show a clear intent on the part of our legislature that the rule adopted in those two cases should be the rule in this State?

III.   The first instruction given by the court is erroneous in several important respects. It assumes that the cattle had been stolen. It declares that if defendant had the

property in his possession, with intent to steal it, he must be found guilty. In other words, that having property in possession, with intent to steal it, constitutes larceny. This was the principal instruction given in the case, yet in it the court gives an entirely new and original definition of larceny, not found in the books.

IV. The proof was insufficient to justify the verdict. There was not sufficient evidence that a larceny had been committed to warrant a conviction. The ownership of the cattle was not sufficiently proved. The circumstances proven tending to connect Newman with the cattle were too vague and unsatisfactory to warrant a conviction upon them.

*L. A. Buckner*, Attorney General, for Respondent.

I. An indictment for larceny can be supported where property is originally stolen in one of the United States and carried into another, where the indictment is found. This question was thoroughly discussed in Massachusetts in *Commonwealth* v. *Upsichord*, Leading Crim. Cases, 371, and *Commonwealth* v. *Holder*, 2 Leading Crim. Cases, 377. These cases have been followed in Connecticut, Maryland, Vermont, Ohio, Mississippi, and Kentucky. A contrary doctrine has been held in North Carolina, New York, Tennessee, Louisiana, Indiana, Iowa, and New Jersey. The question in the case at bar, however, differs from that discussed in the cases above referred to. Here the indictment charges the larceny to have been committed in Lincoln County, Nevada. There is therefore no analogy between this case and that of *Simmons* v. *Commonwealth*, 5 Binney, 617, cited by appellant. There the Pennsylvania jury found, by special verdict, "that the defendant did feloniously steal, take, and carry away the goods * * * * within the state of Delaware, and that he brought them into the city of Philadelphia." The judges properly refused to sentence the prisoner under

those circumstances, while doubtless the facts would have warranted a conviction and sentence for larceny in Pennsylvania. See 1 Bishop's Crim. Law, 106, Sec. 106. Here the evidence established the facts, in addition to possession, that he had no right to the possession and that he had the felonious intent to appropriate the cattle to his own use, and did so by selling them. This established the complete offense in Lincoln County, Nevada.

II. In the New York cases of *People* v. *Gardner*, 2 Johns. 478, and *People* v. *Schenck*, 2 Johns. 479, it was held that where the original theft was in another state, and the stolen property brought into the state where the indictment was found, it could not be supported; but it will be remarked that those cases were on common law grounds. Afterwards a statute was enacted in that state, embodying the contrary or Massachusetts view.

III. The first instruction was not erroneous. If the testimony showed that the original taking was in Utah, and that in addition to the guilty possession, the defendant feloniously appropriated the said property to his own use, knowing who the real owner was, *these facts* made a distinct offense against the laws of this State, triable in Lincoln County. 1 Bishop's Crim. Law, 108.


By the Court, WHITMAN, C. J.:


The appellant was convicted of grand larceny. It was shown by the evidence, so far as there was any showing, that the property, the subject of the larceny, was stolen in Utah Territory. The indictment was for larceny in Lincoln County, State of Nevada.

This state of facts brings up the often and variously decided objection, that no conviction can be had, in one state of this Union, for a larceny committed in another or in a

territory thereof. Thus baldly put, of course no authority could be found to sustain; but convictions have been had upon the principle which allows one stealing in a county of a state to be indicted and tried in any other to which he carries the stolen property, upon the ground that, the title being in the true owner, every moment's continuance of felonious possession is a new crime under the same law. *State* v. *Brown*, 8 Nev. 208. As every state of this Union is, as to its laws and their administration, a foreign country to every other, there can be no analogy between the cases; and thus, despite the very considerable authority in affirmation of this proposition, the weight of precedent and reason is against it. In Massachusetts and other states where the doctrine prevails, it is evidently held more because the rule is established; while the reason is clearly with the dissenting judges. *Com.* v. *Holder*, 9 Gray, 7; *State* v. *Ellis*, 3 Conn. 185; *State* v. *Hamilton*, 11 Ohio, 435; *State* v. *Bartlett*, 11 Vt. 650.

The true reason and authority, however, for an indictment and the rule upon which it can be sustained under facts similar to those of the present record, have been well elucidated by Mr. Bishop in his chapter on "Acts punishable equally by our government and by a foreign government," and to some extent the same were foreshadowed in *The State* v. *Watson*, 36 Miss. 593 and *Com.* v. *Ferrill*, 1 Duvall, 153. As it is impossible to condense the argument of the text writer, so perfectly crystallized is it, the whole will be quoted, although more comprehensive in scope than is absolutely necessary for this decision:

"Under the last two sub-titles this matter was somewhat considered; but it may be well to observe here, that supposing an act to be equally punishable by two sovereignties it does not necessarily follow that both sovereignties will deem it wise to execute the punishment—a matter to be further considered elsewhere. On the other hand, if an act is prop-

erly punishable by another sovereignty, yet the foreign sovereign does not see fit to avail himself of his right to punish it, this liability of punishment abroad furnishes no good reason why we should not punish it when it has been committed in violation of our laws.

"But when we come to the application of these principles, we sometimes meet with differences and embarrassments. Particularly have conflicting opinions been entertained whether, if a man commits larceny of goods in one country, or in one state of our Union, and carries the goods into another country or state, he can be indicted for larceny of them in the latter locality, in analogy to the rule which holds where goods are stolen in one county, and carried by the thief into another one within the same state. Now, this form of the question being the common form, betrays the misapprehension out of which the differences have arisen. Our courts cannot punish offenses against a foreign government; neither can a man excuse himself for a criminal act here, by alleging that he did the same thing elsewhere. From which propositions we conclude, that as a question of principle, a man can neither be punished nor escape punishment for a larceny here, by reason of his having committed it also in another state or country.

"Therefore when a jury sitting in Pennsylvania, found by special verdict 'that the defendant did feloniously steal, take, and carry away the goods   *   *   *   within the state of Delaware, and that he brought the same into the city of Philadelphia, within the jurisdiction of this court,' the judges properly refused to sentence the prisoner (*Simmons* v. *Commonwealth*, 5 Binn. 617,) while doubtless the facts would have justified the jury in convicting him of larceny in Pennsylvania. Always, when a man has with him property in the state where the inquiry arises, the courts look into the legal relation he sustains to it there; if he stole it in another state, he has not even the right to its custody in the new

locality, and the rule of larceny is, that when a man, having in his mind the intent to steal, makes any removal or carrying away of goods to the custody of which he has no title, he commits the crime. Consequently, in the above case, the finding by the jury of a larceny in Delaware was irrelevant; while, in omitting to say whether there was a removal of the goods by trespass with intent to steal them in Pennsylvania, it was defective.

"The question now under consideration, differs in one aspect, from that of goods stolen in one county and conveyed by the thief into another county within the same state. In another aspect it is the same question. No indictment can ever be maintained, unless the proof establishes a complete offense in the particular county in which the indictment was found. But where the first taking was in the same state though in another county, the court can see the relation of the thief to the property, after he brings it into the county of the indictment, to be that of a felonious possessor; and so can infer a larceny in the latter county, from the mere fact of possession. Yet where the first taking is abroad, no such inference can be drawn from the mere possession; while if inquiry establishes something done in this state, beyond merely having possession here, then the fact of there being in the possessor here no right to the possession, to the custody, or to any handling whatever of the property, added to the proof of intent to appropriate it wrongfully here, with a knowledge of the ownership being in the other, establishes the complete offense. Our courts indeed have no occasion to try, neither have they jurisdiction to try, larcenies committed abroad, against the laws of foreign governments. But they can try all offenses against our laws; and if a man has property in his hands here, they can inquire what legal relation he sustains here to this property; and if it came with him from a foreign country, the relation he sustained to it there establishes his relation to it here.

This is familiar law, undisputed, practiced upon daily in all our tribunals, in the ordinary matters of litigation.

"The proposition that a man is to escape punishment for the violation of our laws, because he first violated the laws of a foreign country, is absurd in itself and mischievous in its practical application. Nothing is plainer than that, when a man is found here with property, our courts will inquire after the owner of it, equally whether such owner is alleged to be a foreigner or a citizen, present personally or absent. Nothing is plainer than that our courts will protect the rights of property, equally whether the property is in the owner's grasp, or wrongfully found in the grasp of a felon. And no principle in the law of larceny is better established, as a general doctrine, than that any physical removal, however slight, of the entire physical substance of the thing alleged to be stolen, to which physical substance the remover has not the right of possession, even though he has it in custody, lawfully or unlawfully, is, where the felonious intent exists, larceny. If, therefore, the complete offense is not committed here, by one bringing here from a foreign country personal goods which he has there stolen, using them here as his own and meaning at the same time here to deprive the owner of his ownership therein, then it is impossible for any man, under any circumstances, to do acts completely falling within all the descriptions and definitions given in the books of this offense.

" When we turn to the authorities, we find that they have not always proceeded on the principles thus stated. In an old English case, where goods seized piratically on the ocean were carried by the thief into a county of England, the common law judges refused to take cognizance of the larceny, and remitted the matter to the Admiralty; 'because,' said they, ' the original act, namely the taking of them, was not any offense whereof the common law taketh knowledge; and, by consequence, the bringing of them into a county could

not make the same felony punishable by our law.' *Butler's Case* cited 13 Co. 53; 3 Inst. 113. And the doctrine has been since applied, in England, both to goods stolen in other parts of the king's dominions (altered by Statutes 13 Geo. III. ch. 31, Sec. 4 and 7 and 8; Geo. IV. ch. 29, Sec. 76) and stolen in foreign countries. This doctrine has been followed by the courts of New York, Pennsylvania, North Carolina, Tennessee, Indiana, and Louisiana. It has been discarded and the opposite held in Connecticut, Vermont, Ohio, and Mississippi. In Massachusetts, the court discarded it also, holding defendants liable where the facts showed the original larceny to have been in another of the United States; but, in a late case, where it was in one of the British Provinces, the conviction was overthrown. *Com.* v. *Upsichord,* 3 Gray, 434. The rule which holds the criminal guilty in the state to which he brings his stolen goods has likewise been prescribed by statute in New York since the before mentioned adjudication was made; also in Alabama, Missouri, and some other states." 1 Bishop's Crim. Law (3d ed.,) Secs. 104–110.

Accepting, as is here done, the foregoing quotation as a correct exposition of the law, the first objection must fail.

The next objection is to the first instruction presented in the record, as follows: "Gentlemen of the jury, you are instructed that if you find from the evidence that the defendant was in possession of the cattle charged to have been stolen in the indictment, with a felonious intent to steal, take, and drive away the same, in the County of Lincoln, State of Nevada; and that, if you further believe from the evidence that the property belonged to the persons alleged in the indictment to be the owners thereof, and that the property was of the value of fifty dollars or more, then you will find the defendant guilty as charged in the indictment, though the original taking may have been in Utah Territory." This instruction was evidently drawn with reference

State v. Newman.

to the old doctrine before alluded to, as sustained in Connecticut and other states, and would probably have thereunder been good; but in view of the reason on which this decision stands, it is insufficient. Succinctly stated, it amounts to the proposition that A in possession of the property of B "with felonious intent to steal, take, and drive away the same," is guilty of larceny. This is not enough; as under the facts and law here, there is, and can be, no previous larceny, from which to deduce by mere possession of the stolen property, though coupled with felonious intent, a continuing one. A larceny under the circumstances of this case must be complete in itself, upon its own surroundings; there is no convenient legal fiction to help out the halting fact; and of course it is a self-evident proposition in the abstract that the mere possession of another's property, with intent to steal, is no larceny, until that intent is ripened into act; and so here, to repeat the author before quoted, "Where the first taking is abroad, no such inference can be drawn from the mere possession; while if inquiry establishes something done in this state, beyond merely having possession here, then the fact of there being in the possessor here no right to the possession, to the custody, or to any handling whatever of the property, added to proof of intent to appropriate it wrongfully here, with a knowledge of the ownership being in the other, establishes the complete offense." This instruction then was erroneous. There is nothing in the other objections; but upon this the judgment must be reversed and the cause remanded. It is so ordered.