STATE, RESPONDENT, *v.* BIGGERSTAFF, APPELLANT.

[Submitted February 10, 1896. Decided February 17, 1896.]

CRIMINAL LAW—*Improper remarks of counsel—Review on appeal.*—To authorize the supreme court to review improper language used by the prosecuting attorney in argument to the jury, the defendant should have moved to strike out the objectionable remarks, or have requested the court to direct or instruct the jury to disregard them and have preserved his motion or request, with the ruling of the court thereon, in a bill of exceptions, and an exception to such language, without requesting or securing a ruling of the court thereon, is insufficient, since error cannot be predicated upon the mere silence of the court.

SAME—*Same—Jury.*—The trial court should, of its own motion, direct the jury to disregard a remark by the prosecuting attorney in argument to them that if they improperly convicted the defendant of murder in the first degree he would have his redress in the supreme court.

SAME—*Trial—Harmless error.*—Where a witness when called by the state gives evidence which was excluded when called by the defense, there is no error of which the defendant can complain.

SAME—*Homicide—Evidence—Res gestae.*—On a trial for murder where it had been shown that the defendant had left the house where the killing afterwards took place and had returned to the front door, evidence that the deceased and other witnesses who saw defendant coming, exclaimed: "There he comes with a gun," is admissible as part of the *res gestae.*

*Appeal from First Judicial District, Lewis and Clarke County.*

CONVICTION for murder in the first degree. Defendant was tried before BLAKE, J. Affirmed.

*C. B. Nolan* and *Henry C. Smith,* for Appellant.

*Henri J. Haskell,* Attorney General, and *R. R. Purcell,* for Respondent.

PEMBERTON, C. J.—On the 19th day of October, 1895, the above-named defendant was convicted of murder in the first

degree in the district court of Lewis and Clarke county, and on the 26th day of the same month was sentenced to be hanged. From the judgment and order of court overruling his motion for a new trial, the defendant appeals.

The counsel for the defendant contend that "error of law was committed in the closing argument of said cause by the county attorney, prejudicial to the defendant, to wit, in the use of intemperate language as to the prevalence of crime and the neglect of other juries to do their duty, and the necessity for said jury to act, speedily and adversely to defendant, and that, if wrong were done, a rectification thereof could be had in the supreme court; and the failure of the court, by instruction or otherwise, to admonish the jury to disregard such an appeal so made."

The language of the county attorney complained of in this assignment is as follows, as shown by the bill of exceptions: "Crimes have been committed in the past in this county, and murderers have been turned loose by reason of the failure of juries to convict and to do their duty, and the community demands a conviction in this case, and the law and public justice demands a conviction. If any wrong or injury is done the defendant in his being convicted, he has his redress by an appeal to the supreme court. The jury should disregard the argument of the counsel except so far as it would assist or guide them in arriving at a right verdict, and I do not want an innocent man convicted. Mr. Nolan, the attorney for the defendant, knows that the defendant ought to be convicted of murder, and is only striving and endeavoring to save his neck, and anything else than the execution of the defendant would be satisfactory to him."

Whereupon Nolan, counsel for the defendant, interrupting the county attorney, said: "I desire to object to the argument of the county attorney in so far as it affects myself and the position 1 seek to maintain in the defense of the defendant. I do not care to interrupt the county attorney, and would not have done it, but now that I am on my feet, 1 object to the remarks made by the county attorney in respect to the prevalence of crime," etc.

The court then remarked: "In passing upon a matter of this kind, the court is placed in a delicate position. At any rate, Mr. Nolan has stated what his position is in the argument which he made, and you can proceed."

Thereupon Mr. Nolan, counsel for the defendant, said: "I would, on behalf of the defendant, preserve an exception."

The county attorney, resuming his argument, was about to refer again to the prevalence of crime, when the court, of its own motion, interrupted him, and said: "Mr. Purcell, this matter is objected to by the attorney for the defense, and I would prefer that you would not speak about it."

Whereupon the county attorney said to the jury: "I know, and you know, and we all know, and there is no use referring to the matter further."

These quotations from the bill of exceptions show, not only the objectionable language used by the county attorney, but everything that was said and done by counsel for the defendant in the way of objections or exceptions thereto, as well as what effort was made by counsel to secure any action or ruling of the court in relation thereto.

Counsel for the defendant contend that the language used by the county attorney was intemperate, improper,, and calculated to injure the defendant. Counsel have referred us to numerous cases and authorities holding such language to be sufficiently prejudicial and erroneous to authorize a reversal of the case. But these were cases for the greater part where the lower court had refused at the time the language was used, on motion of defendant, to strike it out, or direct the jury to disregard it, or, at the request of defendant, to instruct the jury to disregard it, and where the action of the court had been properly preserved in a bill of exceptions. The record in this case shows nothing of this kind. When counsel for the defendant objected to the language of the county attorney, he directed his objection to the county attorney's statement of the position of counsel for the defendant as to defendant's guilt, and, in an apologetic manner, says: "But now that I am on my feet, I object to the remarks made by the county

attorney in respect to the prevalence of crime.'' Nowhere
does he request or move the court to direct the jury to disregard
this objectionable language. No instruction is asked directing
the jury to disregard the language of the county attorney.
The court is not requested at any time to make any ruling as
to the objectionable language. It is fair to presume that, if
the learned judge who tried the case had been requested, he
would either have directed the jury to disregard the language
at the time it was used, or would have instructed the jury in
his charge to do so. It is true, counsel objected to the
language used by the county attorney. But there is no excep-
tion saved to the refusal of the court to act with respect to this
language. In fact, the court was never requested to make any
ruling in relation to the objectionable language. If the de-
fendant had requested the court to make the proper ruling in
relation to the language objected to, and the court had re-
fused, and this refusal had been properly preserved in an ex-
ception, then there would be a case here for this court to act
upon. What the court said about the objectionable language
was in disapproval of it. There is no objection in the record
as to what the county attorney said after the court requested
him not to speak of the prevalence of crime. The objection
made by counsel to the county attorney's speaking of the
prevalence of crime does not cover what he said about an ap-
peal to the supreme court in case the jury erred in finding the
defendant guilty.

We regard the reference the county attorney made to the
right of appeal to the supreme court in the event the jury im-
properly found the defendant guilty of murder in the first de-
gree as the most objectionable part of the language complained
of. The statement was incorrect as a matter of law, for, if
the jury found the defendant guilty on the evidence, the su-
preme court would not necessarily have any right to interfere
with the verdict. Such statement was calculated to cause the
jury to be less cautious in weighing the evidence, and less
mindful of their duties as jurors, than they otherwise might
have been, for they might have felt that, if they did wrong in

the discharge of their duty, the supreme court would correct them, and save the defendant harmless. This statement was calculated to induce the jury to place a lighter estimate on their own solemn duties than they otherwise would, perhaps, have done, by the assurance of the attorney that they could throw the responsibility of the discharge of their duties on the court.

The language complained of was highly improper and reprehensible, and we think the court should, of its own motion, have prevented its use, or directed the jury to wholly disregard it. But we are also of the opinion that this language is not before this court in such manner as to authorize us to treat it. It is not preserved in any exception to any ruling of the court thereon.

In *Welsh* v. *Brown*, (Ind. App.), 35 N. E. 921, it is held that an objection and exception by counsel to an objectionable argument "is not a showing of any ruling of the court upon which error can be predicated." The court in that case said : "Unless the court below was given an opportunity to correct the error, no valid exception can be saved. If the court was asked to compel counsel to withdraw his statement, to instruct the jury to disregard it, or to discharge the jury on account of such statement, and refused to do so, to appellant's injury, and the proper exception saved, this court would have some questions to review; but no question is presented by the record, as it comes to us."

In *Farmer* v. *State*, 91 Ga. 720, 18 S. E. 987, in a case like the one at bar, it is said : "The facts of the case touching improper remarks by counsel for the state in his argument to the jury are set forth in the official report. It will be noticed that the cause of complaint as embodied in the motion for a new trial is somewhat mitigated by the explanatory note of the presiding judge. But the impropriety was very great, and the court should have unequivocally rebuked the counsel, and instructed the jury to disregard entirely the improper remarks, even without any request to do so. The omission to deal thus with the matter is attributable only, we think, to in-

advertance.    The failure of the counsel for  the accused either to move to have a mistrial declared or to request any charge to the jury on the subject, and thus to invoke a ruling by the court, is all that prevents this from being cause for a new trial.''

In *State* v. *Howard* (Mo. Sup.), 24 S. W. 41,  speaking of improper argument of the case, the court says :   ''The proper course to pursue, if such improper conduct occurred,  was to have called the attention of the court to the matter, and demanded that the proper remedy be applied, and, if it were not, to have saved an exception.    This is the only course which, in such circumstances, can be pursued, since matters of exception, which this was, stand on the same footing in criminal as in civil cases, and can only be saved by the like means in the one as in the other.''

In *Railway Co.* v.  *Cotton*, 140 Ill. 186, 29 N. E. 899,  in a case like the one under  consideration, the court says :   ''The bill of exceptions contairs quite extended extracts from the addresses to the jury by the plaintiff's counsel, and these extracts  embrace various remarks which, we think, were highly improper; but, as to those to which the most serious objection exists, it does not appear that the court was called upon to make or did make any ruling.    Several of the most objectionable paragraphs, as they appear in the bill of exceptions, are followed by the memorandum,  'Excepted to by the counsel for the defendant; ' but nothing is shown  indicating  that any objection was interposed, or that the court was called upon to make,  or  did make,  any ruling to which the exception could apply.''

Thompson, in his work on Trials,  says it is the duty of counsel to object, when  his adversary exceeds the limits allowed to advocacy, at the time, to answer it by counter  argument,  or  to ask  suitable instructions to the jury with reference to the objectionable language; that it is the duty of counsel to secure a ruling of the court;  that error cannot be predicated upon the silence of the court,  where there is no request for an admonition to the jury not to be influenced by the state-

ment. (1 Thompson on Trials, § 957. See, also, *State* v. *Mack* (La.), 14 South. 141; *Stone* v. *State*, (Ala.), 17 South. 114; *Territory* v. *Collins*, 6 Dak. 234, 50 N. W. 122; *Learned* v. *Hall*, 133 Mass. 417; *Miller* v. *State* (Tex. Cr. App.), 25 S. W. 634; *State* v. *Sortor* (Kan. Sup.), 34 Pac. 1036.)

We think the great weight of authority is to the effect that, in order to bring the language complained of before this court for review, it was necessary for the defendant to request and secure a ruling of the court thereon, and properly save an exception to such ruling in a bill of exceptions. The bill of exceptions in the case presents no such record or action of the court as to authorize us to pass upon the language of the county attorney. It was never properly raised and passed upon by the lower court. It cannot be raised here for the first time.

Counsel for the defendant assign as error the action of the court in excluding certain testimony of the witness for defendant, Mrs. Houghton. It appears that the killing took place at a house called the "Mathews House." The defendant went to this house at about 5 o'clock on the morning of the day of the homicide. There he found deceased and others. It was the theory of the prosecution that the defendant went there with the intention to kill deceased. The defendant sought to prove by the witness, Mrs. Houghton, that she requested him to go to the Mathews house to see if her daughter was there. The court excluded the evidence. But the record shows that this witness went on the stand as a witness for the state, and testified without objection to the very facts sought to be proved by her by the defendant. The evidence which the defendant sought from this witness was before the jury, given by the witness when she testified for the state. It would make it no stronger to have her repeat it as the defendant's witness.

After the defendant went to the Mathews house, the witness, Mrs. Houghton, followed him there. At the house a difficulty arose between the defendant and deceased. The deceased left the Mathews house. Witness Houghton followed him out. The state contended that the defendant went out of the Mathews

house to get his gun or pistol.   Defendant sought to prove by the same witness, Mrs. Houghton, that she followed him out to get him to send for the father of Emma Bowhay; and that defendant went out for that purpose.   But the witness did testify to just what defendant wanted to prove by her in this respect.   This evidence was given to the jury by the witness on cross-examination.   So that, as the evidence of this witness was before the jury, and the defendant got the full benefit of it, we are unable to see how he was injured in the respects specified.

Soon after the defendant left the Mathews house, by the back door, he returned to the front door, with his pistol in his hand.   As defendant approached the front door, deceased and others saw him.   They exclaimed, "There he comes with a gun!" and immediately shut the door, and deceased and a witness named Smith tried to keep him out by holding the door against him.   The counsel for the defendant claim that the exclamations of the deceased and witness, "There he comes with a gun!" are hearsay, and should have been excluded. They were, in our opinion, part of the *res gestae*, and properly admitted in evidence.

There are no other errors assigned which we deem worthy of special treatment.   While all the evidence is not in the record, we think there is sufficient to show that the defendant was the willful and determined aggressor in the difficulty which resulted fatally to the deceased.   We are satisfied that the evidence is amply sufficient to support the verdict of the jury to the effect that the killing in this case was done willfully, deliberately, premeditately and with malice aforethought.   The judgment and order appealed from are affirmed, and the case remanded to the district court for such further proceedings as are necessary under the law to carry the sentence of the court into execution.   (*State* v. *Cadotte, ante,* page 315.)

*Affirmed.*

DE WITT and HUNT, JJ., concur.