# STATE OF MONTANA, RESPONDENT, *v.* JOHN BLOOR, APPELLANT.

[Submitted January 18, 1898.  Decided March 21, 1898.]

*Public Records— Secretion—Secretary of Senate—Indictment — Sufficiency — Witnesses — Examination — Constitutional Law—Remarks of Counsel—Harmless Error—Objections.*

1. AFTER a bill had passed the Senate, and come into its secretary's hands to be transmitted to the House, he talked with an opponent of the bill about it, and the opponent picked it up and laughed with him, and he winked at the opponent, who had said a few days previously that if the opponents of the bill could not talk it to death they would have to get rid of it some other way. The bill was defeated because not transmitted to the House before its adjournment. After the adjournment the secretary went to the office of the clerk of the House with a paper similar to a bill in his hand, pretended to examine a pigeon hole in the clerk's desk, and soon after pulled out the missing bill, and exclaimed "Why, here is your bill." The evidence further showed that about twenty minutes prior to this the pigeon hole had been examined and the bill was not there, and that no one had been near the desk between that time and the pretended examination of the place by the defendant. The defendant admitted that he found the bill in his own desk, that he was annoyed at finding it there, and for that reason put it in the pigeon hole in the clerk's desk. Evidence was further introduced tending to show that, a few days after the adjournment of the Legislature, the defendant told two persons that the clerk "got away with the salary bill." *Held,* that a verdict finding the defendant guilty of secreting a public record was sustained by the evidence.

2. ALLEGATIONS in an indictment in the participial form, such as, "he being an officer," are sufficient as to matters not constituting the main charge.

3. AN indictment under Penal Code, Section 230, for secreting a public record, alleged that defendant, being an officer and having in his custody a certain public record, and which said record came into and was in his hands, and was by him feloniously secreted. Defendant contended that the charging part was an unfinished sentence, and that the allegation respecting 'secretion was merely descriptive of the record. *Held,* that the offense was charged with "such a degree of certainty" that judgment might be pronounced according to the right of the case, as required by Section 1841.

4. AN indictment under Penal Code, Section 230, for willfully secreting a public record, need not allege an intent to injure any particular person, in view of Section 7, providing that an act may be done "willfully" without any intent to injure another.

5. The indictment need not allege the means used to secrete the record.

6. The secretary of the Senate has custody of all bills, though Political Code, Section 202, requires the assistant secretary to take charge of them.

7. Where a bill was placed in the hands of the secretary of the Senate after its passage in the Senate, to be transmitted by him in his official capacity to the House, and he willfully withheld it, he was guilty of secreting a public record, under Penal Code' Section 230, though he was not the officer required by law to take charge of bills.

8. Under Code of Civil Procedure, Sections 3377, 3380, authorizing a party to contradict his own witness by other evidence, and to ask him whether he had made other statements, the state, in a criminal prosecution, may cross-examine its witness, where his testimony varies from what the county attorney had reasons to believe it would be.

9. The sections are not repugnant to Constitution, Article 3, section 27, (14th Amend. Const. U. S. Section 1), prohibiting the deprivation of liberty without due process of law.

10. WHERE the secretary of the Senate is charged with secreting a bill which had passed the Senate, it is not error to refuse to require the state to introduce as its witness the clerk who made the last indorsement on the bill, reciting that it had been read the third time and concurred in, and to whom the bill was handed immediately after its passage, where the secretary afterwards obtained possession of it, though the evidence of willful wrong on the part of the secretary is circumstantial.

11. ACCUSED did not introduce witnesses to show his good character, as he had declared in his opening statement to the jury that he would do. After defendant had rested, the county attorney asked why such witnesses were not introduced, and an exception to the remark was sustained, and the jury admonished to disregard it. During his closing argument the county attorney said that the accused did not dare introduce the witnesses, because he (the county attorney) had witnesses ready to contradict them, and the court overruled an exception thereto, and the county attorney continued to discuss the matter, when defendant again objected, and the court then admonished the jury to disregard the remarks. Next morning the jury were instructed "to absolutely disregard" said remarks. *Held,* that defendant was not prejudiced.

12. A DEFENDANT accused of secreting a legislative bill reducing the salaries of county officers, before it had reached its final passage, is not so prejudiced, as to warrant a reversal, by the remarks of the county attorney, made in his opening statement and during his closing argument, that the defendant prevented the passage of the bill, which would have caused great saving to taxpayers if it had passed, where the court admonished the jury to disregard the remarks.

13. AN objection to remarks of the county attorney cannot be considered where no exception thereto was reserved.

*Appeal from District Court, Lewis and Clarke County. H. C. Smith, Judge.*

Statement of the case by the justice delivering the opinion.

DEFENDANT was indicted for the crime of secreting a public record. He entered a plea of not guilty, was tried and convicted, and appeals from the judgment and from an order denying a motion for a new trial. Affirmed.

The indictment, omitting the mere formal introductory parts, is as follows : ''The grand jurors of the grand jury * * * do accuse John Bloor, late of the said county of Lewis and Clarke, of the crime of secreting a public record, committed on the 4th day of March, A. D. 1897, at the county of Lewis and Clarke, in the State of Montana, as follows: The said John Bloor, being then and there a duly elected, qualified, and acting officer of the State of Montana, to wit, secretary of the Senate of the Fifth Legislative Assembly of the State of Montana, having been theretofore duly and regularly elected to the office aforesaid, by the Senate aforesaid, on the 4th day of January, A. D. 1897, and having on

said 4th day of January, A. D. 1897, taken and subscribed the oath prescribed by law to be taken and subscribed by said officer, and then and there, on the fourth day of March, A. D. 1897, having in his custody, possession, and control, under and by virtue of his office aforesaid, a certain record, bill, or paper of the said Fifth Legislative Assembly of the State of Montana, to wit, 'Substitute for House bill No. 185, a bill for an act amending Sections 4594 and 4596 of the Political Code of the State of Montana, relative to and reducing the annual compensation or salary for services of county officers in the various classes of counties,' introduced by the ways and means committee of the House of Representatives of the said Fifth Legislative Assembly of the State of Montana, and which said substitute bill No. 185, as aforesaid, had then and there, at the date aforesaid, to wit, on the fourth day of March, A. D. 1897, duly and regularly passed both houses of the Legislative Assembly aforesaid, and which said record bill or paper aforesaid came into and was then and there in the hands of the said John Bloor, secretary as aforesaid, for the purpose of being by him, the said John Bloor, by virtue of his office aforesaid, transmitted to the House of Representatives of the Fifth Legislative Assembly aforesaid, and which said record, bill, or paper was, on the date aforesaid, to-wit, on the fourth day of March, A. D. 1897, by him, the said John Bloor, willfully and feloniously secreted; all of which is contrary to the form, force, and effect of the statute in such case made and provided, and against the peace and dignity of the State of Montana.''

The statute under which the indictment was drawn is as follows : ''Every officer having the custody of any record, map or book, or of any paper, or proceeding of any court, filed or deposited in any public office, or placed in his hands for any purpose, who is guilty of stealing, willfully destroying, mutilating, defacing, altering or falsifying, removing or secreting the whole or any part of such record, map, book, paper or proceeding, or who permits any other person so to do, is punishable by imprisonment in the state prison not less than one nor more than fourteen years.'' (Penal Code, § 230.)

*E. A. Carleton* and *T. J. Walsh*, for Appellant.

*C. B. Nolan*, Attorney General, and *R. R. Purcell*, for the State.

HUNT, J.—The defendant urges that he was entitled to an acquittal because (1) there is no evidence on the part of the state that the bill in question came into defendant's hands by virtue of defendant's official position; because (2) there is no evidence that the defendant secreted the bill; because (3) there is no evidence that, if he secreted the bill, it was done for any illegal purpose.

The record is very voluminous, and we shall not encumber this opinion by reciting the evidence at length. The following material facts appeared : Defendant was the duly qualified and acting secretary of the Senate of the Fifth Legislative Assembly, and one H. S. Corbley was his assistant. Substitute for house bill No. 185 passed the House of Representatives on March 4, 1897, and was received by the Senate on that day. In the Senate it was read a third time and passed.

The passage of the bill through the Senate occurred on the last night of the session. After it was read on its final passage, the assistant secretary, Corbley, handed it to the defendant, Bloor, who was sitting at the desk near him. Corbley did not see the bill thereafter. No enrolled copy thereof was presented to the Speaker of the House or to the President of the Senate. On the day following the adjournment of the Legislature the defendant, Bloor, told Corbley that he had found the bill in question in a pigeon hole in his (Bloor's) desk with bills which were indefinitely postponed by the Senate. The custom of the secretary and his assistant in transmitting to the House the various bills after their passage in the Senate was to first make the necessary indorsements on the bills, then seal them up with a short message, and deliver them themselves, or hand them to a page to deliver, to the sergeant-at-arms to take to the House. The indorsements upon the bill in question, with but a single exception, so far as the history of the bill in the Senate went, were in defend-

ant's handwriting. The last indorsement, which was not in his handwriting, was as follows: ''Read third time, concurred in, and title agreed to.'' It appears that upon the last night of the session one Langford was assisting the Secretary of the Senate in writing up the record of the bills, and wrote some indorsements on the back. It also appeared that one Hines, then the treasurer of Silver Bow county, was trying to defeat the bill in question; that the defendant, Bloor, and Hines were talking about this particular bill in the senate chamber after its passage in the Senate on March 4th; that Hines went up to defendant's desk; that defendant picked up some papers and handed them to Hines; that Hines folded one up, and, shaking it at Bloor, said something to him; that Bloor picked up a package of bills, went over them, and handed one to Hines, who took it, and held it up so that the light would strike it, and that the bill so held up by Hines was the bill in question; that it was recognized by Mr. W. A. Clark, a member of the House of Representatives, who had prepared the bill himself for the committee, and who was sitting some distance from the desk of the secretary at the time; that Hines took the bill, folded it up, and commenced talking to Bloor, and making motions with it, and then laughed with Bloor, who passed behind his desk and winked at Hines. It further appeared that Hines had said a few days before the last day of the session that ''we [meaning evidently the officials of Silver Bow county] have to do something to get away with that bill; we don't want the salaries of the officials of Silver Bow county reduced; and, if we can't talk it to death, we have to get rid of it in some other way.''

On the day following the adjournment a search was made for the bill. The defendant, Bloor, said that the bill had been transmitted to the House the night before and prior to the adjournment of the Legislature. He went over to the room of the House, and soon returned, stating that the bill had gone over to the House by the sergeant-at-arms, and that it had been found. The chief clerk of the House, Dave Marks, testified that the bill had not been handed to him by

the speaker or any one else during the closing hours of the session, and that the first he knew of the loss of it was the afternoon following the adjournment; that one Greenfield then searched the witness' desk for the bill, but could not find it; that the defendant, Bloor, afterwards came in, and went through the pigeon holes above his desk, and told him (Marks) that he had sent the bill to the House; that defendant then left the House chamber, but returned shortly, saying that the bill must be in the House; that defendant went back of the chair occupied by witness, who was then dictating his minutes, and put his hand to one of the pigeon holes and was examining some papers; that he seemed to have something like a bill in his hand at that time; that Bloor then came to the front of witness' desk, and remarked that it was strange, and that the bill must be in the House, and then went back to the pigeon holes, when he again reached up to them, and pulled out the bill, remarking, "Why, here is your bill!" that thereupon Chief Clerk Marks declined to keep possession of it, saying that it did not come to him in the regular order, and that he would not keep it, telling defendant, Bloor, that the bill had not been in the pigeon hole where it was taken from 10 minutes before.

A. C. Logan, assistant clerk of the House of Representatives, testified that the bill had not been returned from the Senate to the House before the Legislature adjourned; that the following day he made a search in the clerk's desk, and in the pigeon holes behind that desk, and that the particular pigeon hole out of which the defendant subsequently took the bill was carefully searched by this witness 20 or 30 minutes before Bloor came in; that this witness could not find the bill in his search; that Mr. Bloor was in the House a very short time prior to the time that the bill was found by him; that at the time the chief clerk was at his desk; that a very few minutes after that time Bloor pulled the bill out of a pigeon hole, and threw it on Marks' desk. This witness stated that he did not see the defendant put the bill into the pigeon hole, but that he did see him take it out.

Defendant himself testified at great length, and said that in the afternoon of the day following the adjournment of the Legislature he found the bill in a pigeon hole in his own desk in the Senate room; that the reason why he put it in the desk of Marks, the chief clerk of the House, was because it was the only bill that "had gone wrong," and he was annoyed at finding it there; that at the time of the trial he realized that he was foolish, and regretted having taken it into the House to Marks' desk; that he knew that the papers which he had in his desk or under his control were to be turned over to the Secretary of State, and that he had no explanation to make why it was that he took the bill and put it on Marks' desk other than that just given; that he knew that the bill had been defeated and had been prevented from becoming a law by reason of the fact that it had been mislaid; that he did not tell Marks and his assistant about the bill being in their desk because he did not desire to get them into trouble; that he ought to have spoken to them about it, but that he did not do so until some time after it was discovered.

Mr. A. J. Campbell, a member of the House of Representatives of the Fifth Legislative Assembly, testified in rebuttal that he met the defendant a few days after the adjournment of the legislature, and that, in the presence of Mr. Sidney Fox, the defendant told him that Dave Marks, the chief clerk of the House, was the man who "got away with the salary bill." This testimony was corroborated by Mr. Fox.

It requires no argument to sustain the statement that, in the light of this evidence, supplemented, as it was, by testimony corroborative of the material facts, the jury were amply justified in finding defendant guilty, provided the evidence was credible.

Stress is laid on the meaning of the word "secreting," the learned counsel for defendant contending that mere inaction upon defendant's part is insufficient to constitute the crime. But if during a legislative session a bill already passed comes into the hands of a clerk to transmit it to that branch of the Assembly whence it had its origin, and to which it must be re-

turned that it may be finally proceeded with in order to become a law of the state, and such clerk, then in possession of such bill, purposely withholds it, whether by putting it in his desk or otherwise removing it, to prevent its discovery, and purposely refrains from transmitting it as required, such conduct, in our opinion, is the secretion of the bill, and the person guilty of such acts is clearly brought within the purview of the statute.

It is strenuously argued that the indictment does not charge a public offense. This point rests upon the contention that the charging part of the indictment is an unfinished sentence. But, when scrutinized, the pleading is not fairly susceptible to defendant's objection.

The omission to directly and explicitly aver that the defendant was the secretary of the Senate, and that he did have the particular bill involved in his custody and possession, is careless pleading, yet the meaning is clear that he was such official and did have the bill. When a like question was raised in *State* v. *Munch*, 22 Minn. 67, where it was alleged a defendant ''being then and there a person employed,'' etc., the court said it was impossible not to understand from the indictment that it was the fact that the defendant was a person employed. The participial form of pleading is generally to be avoided, as not direct, but in matter not constituting the main charge it is held sufficient if the intention of the indictment is plain. (Bish. New Cr. Proc. §§ 555, 556; *Bergen* v. *People*, 17 Ill. 426.) Believing, therefore, that the indictment is sufficiently certain and direct in this respect, it in effect avers that Bloor was the duly elected and qualified and acting secretary of the Senate, and did have in his possession, custody, and control House bill No. 185, which was entitled as set forth, and which had passed both houses of the Legislature. The pleader then abandoned the habit of alleging facts by inference, and went to these averments: ''And which said record bill or paper aforesaid came into and was then and there in the hands of the said John Bloor,'' etc., ''for the purpose,'' etc., ''and which said record bill or paper was * * *

by him, the said John Bloor, willfully and feloniously secreted," etc. These latter allegations are not parts of the clause descriptive of the bill. Such descriptive parts ended before the positive averments, and before the change from participles to verbs. The particle "and" was evidently used not to add to the description of the bill, but to continue the reference to it, and to connect the wrong acts charged with the bill previously described, which was the object secreted. So regarding the allegations, it is directly charged that the bill was willfully and feloniously secreted. The better form of words would have been to have charged that the defendant did willfully and feloniously secrete the bill, but if the main charge is direct and certain, as required by Section 1834, Penal Code, "the law, which is even indifferent to false grammar and verbal inaccuracies, does not require for the direct averment any particular part of speech, provided that to the common understanding it is direct." (Bish. New Cr. Proc. Section 556.) Section 1841, Penal Code, declares, in effect, that an indictment is sufficient if it can be understood therefrom that the act charged as the offense is set forth in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended. Again, an indictment is not insufficient by reason of any defect or imperfection in matter of form which does not tend to the prejudice of a substantial right of the defendant on its merits. (Section 1842, Penal Code.) Tested by these rules, we think there was an offense charged, and that it was stated with "such a degree of certainty" as to enable the court to pronounce judgment according to the right of the case. (Section 1841, Penal Code.)

Some of the English judges went very far in overlooking false grammar in cases where the meaning was clear; the principle being that, if a wrong word is employed, or a word omitted, or, a useless one added, or if one word is substituted for another, it will be fatal or not, "according as it weakens or changes or not the allegation to what in meaning is inadequate." (Bish. New Cr. Proc. § 354.) And here we go no

further than to hold that the indictment charges an offense under Section 230 of the Penal Code. Whether demurrer or motion assailing its imperfections on other grounds would have been well taken is not before us. We will say, however, that the form of the indictment is not to be approved of. It is full of literary faults, yet we cannot discover that it is fatally defective. The meaning is plain, notwithstanding the many verbal inaccuracies.

It is said that in an offense of the character charged the intent to injure or defraud some one is essential and must be alleged. The point is not well taken. "To do a thing willfully is to do it by design, with set purpose." (*People* v. *Sheldon*, 68 Cal. 434, 9 Pac. 457.) Section 7 of the Penal Code defines the word "willfully," when applied to the intent with which an act is done, as simply "a purpose or willingness to commit the act. It does not require any intent to violate law, or to injure another, or to acquire any advantage." If, on the other hand, the act be done through surprise or confusion, or a *bona fide* mistake, and not knowingly and of stubborn purpose, the design and set purpose are absent, and it is not willfully done. But the intent to injure any particular person is not essential to the crime defined by the statute; hence it was not necessary to allege such intent. (*State* v. *Broadbent*, 19 Mont. 467, 48 Pac. 775.)

Counsel's next proposition is that the indictment does not state an offense, because it omits to set forth in what manner and how the legislative bill was secreted by defendant. As a rule, the secretion of a bill or record can only be proved by circumstances from which it will be inferred that there was a secretion. The arts by which the bill has been secreted are really matters of evidence, and are not necessary to be alleged in order to state the statutory offense. We are cited to Bishop's precedent for an indictment for concealing the death of a bastard child. (Bish. Directions and Forms, 278.) That author believes that the better rule in charging such offenses is to require the manner of secreting to be averred; but he states that the Pennsylvania decisions are to the contrary, and

cites *Boyles* v. *Com.*, 2 Serg. & R. 40, where the court took the following reasonable view of pleading under the statute of that state: "To constitute this offense, the child must be a bastard, and there must be an endeavor to conceal its death. Both these facts are set forth, but it is objected that it should also be set forth in what manner or by what arts the mother endeavored to conceal the death, in order that she may know precisely what is intended to be proved against her. I see no reason for this. The offense is charged exactly as it is described in the law, and, as for notice, it is enough that she knows she must come prepared to show that she did not endeavor to conceal the death of the child. This may be done by any positive act of her own inconsistent with an intent to conceal. This law has been 20 years in force, and there have been many prosecutions and convictions under it. The present indictment is in the usual form, to which I have never before heard this objection, nor do I think it founded on any good reason." (See, also, Moore, Cr. Law, p. 324, where the form is in accord with the Pennsylvania rule). We, therefore, believe the indictment was sufficient as against the single objection that it did not state an offense.

Appellant also argues that under Sections 201, 202, Political Code, the defendant did not have the custody of the bill by virtue of his office as secretary of the Senate. We do not interpret the statutes cited as placing the custody of the bill exclusively in the hands of the assistant secretary of the Senate. We believe the custody is in the secretary as well. But it makes no difference whether or not he was the technical legal custodian of the bill, provided it was in his hands as secretary of the Senate for the purpose of being transmitted by him in his official capacity to the House of Representatives.

An officer of the Senate was called as a witness for the state, and, after he had testified at some length concerning the course and whereabouts of the bill in question, he was asked to state in whose hands he saw the bill on the last night of the legislative session. The witness answered that he could not say in whose hands he saw it; that he could not state that

he saw it in Bloor's hands. Thereupon the county attorney asked the witness if, at a certain time and place, he had not said that he received the bill and handed it to the defendant, and had not seen it afterwards. The defendant's counsel objected; whereupon the county attorney stated to the court that the witness was an unwilling one, and he therefore asked leave to put the question. The court thereupon allowed the county attorney to cross-examine the witness. The witness denied making the statement.

Section 3377 of the Code of Civil Procedure, which applies to criminal trials as well as civil, is as follows: "The party producing a witness is not allowed to impeach his credit by evidence of bad character, but he may contradict him by other evidence, and may also show that he has made at other times statements inconsistent with his present testimony as provided in Section 3380."

We believe that under the express terms of this statute the state has a right to cross-examine one of its own witnesses where it satisfactorily appears that the evidence has taken the county attorney by surprise, and is contrary to the examination of such witness preparatory to the trial, or to what the prosecuting attorney has reason to believe the witness would testify to. It not infrequently happens that a witness is brought under the influence of an adverse party, and upon the trial completely deceives the party calling him. When such instances arise in criminal cases, by the great weight of authority the right to cross-examine arises as one necessary for the protection of the rights of the state against the perjury or evasion of an unwilling witness. (1 Greenleaf on Evidence, § 444.) We find no abuse of discretion on the part of the court in this respect. (Underhill on Criminal Evidence, § 212, and cases cited; Thompson on Trials, § 359.)

The suggestion in counsel's brief that the statute cited above, which permits the state to cross-examine its own witness, is unconstitutional, and violative of Article 3, Section 27, of the Constitution of Montana, and Article 14, Section 1, of the amendments to the Constitution of the United States, is not tenable.

It is contended that the evidence of any willful wrong on the part of the defendant being circumstantial, one Langford, who was a clerk in the Senate upon the night that the bill was lost and who was called by defendant, ought to have been put upon the witness stand by the state. Langford had not been a witness before the grand jury, but his name was put on the indictment by leave of court. The state, however, did not call him. The testimony of Langford was to the effect that the last indorsement on the bill was his, and that he presumed the bill was handed to him after it had passed the Senate; that he did not know what he did with it, as it was his custom to hand the bills immediately after their indorsement, to the secretary or assistant secretary, or to lay them on the desk; that he did not see Hines hold up the bill, as testified to by the witness Clark for the state; that he did not see anybody wink at Bloor; that there was great confusion in the Senate chamber upon the night in question; and that he did not think that the bill had passed the Senate at the time that Clark was in the Senate chamber. On cross-examination the witness stated that he had been conversing with Bloor just before the trial; that he had known Bloor for a long time, and that at one time he was in partnership with him practicing law. We are wholly unable to see wherein the court abused its discretion by overruling the defendant's motion to compel the county attorney to put this witness on the stand in behalf of the state. His testimony does not appear to have been very material to either side, and, clearly, the rule announced in *State* v. *Metcalf,* 17 Mont. 417, 43 Pac. 182, and *Territory* v. *Hanna,* 5 Mont. 248, 5 Pac. 252, was not violated.

The defendant asks for a reversal upon the grounds that certain remarks of the county attorney were of such a nature as to prejudice the rights of the defendant, and that, because of such remarks and repetitions of them, he was deprived of a fair trial. It appears that one of counsel for defendant in opening defendant's case, and after the state had rested, stated to the jury that as part of the defense they would prove the good character of the defendant by witnesses then in the court

room.    The defendant closed his case without attempting to make such proof, whereupon the county attorney, after the defendant rested, arose, and in an audible tone, inquired where all the witnesses were that the defendant had to prove his good character, and asked why they were not put upon the stand. The defendant excepted to the language of the county attorney, and the court admonished the jury to disregard it.    In his closing address to the jury the county attorney again referred to the fact that the defendant had subpoenaed a large number of witnesses, and brought them from Flathead county, "but that he did not dare to put them on the stand, because he (the county attorney) was ready for them and had other witnesses there to contradict them." The defendant excepted to this language of the county attorney. The court overruled the exception, and he was permitted to continue the discussion of the failure of the defendant to call witnesses to testify to his good character.    He was then again interrupted by the defendant's counsel with objections to the line of argument pursued, and again the jury were admonished not to regard the statements excepted to by the defendant's counsel. On the morning after the county attorney had made these remarks, and before the court charged the jury finally, the judge referred to the comments of the county attorney of the day before in reference to the matter, and directed the jury "to absolutely disregard" the remarks of the county attorney upon the subject just referred to.

The county attorney also told the jury in his opening statement that, had it not been for the acts of the defendant, the bill referred to in the indictment would have become a law, and would have resulted in a great saving to the taxpayers of Lewis and Clarke county and to the State of Montana.    The defendant excepted to this remark, and the court admonished the jury to disregard it.    Again, in his closing address, the county attorney made reference to this same matter, and again the court admonished the jury not to regard it.    And again, in his final charge to the jury, the court instructed them to disregard all statements of counsel not supported by evidence before them.

The county attorney during his argument criticised the witness Langford, by stating to the jury that he believed that he had deliberately perjured himself by certain inconsistencies in his testimony in relation to a memorandum concerning the particular bill involved upon this trial.     No exception was reserved to the remarks, and any objection the defendant had to them cannot now avail him.     (*State* v.  *Gay*, 18 Mont. 51, 44 Pac. 411; *State* v.  *Biggerstaff*, 17 Mont. 510, 43 Pac. 709.)

We believe that it would have been proper for the court to have reprimanded the county attorney, and punished him for contempt, for reiterating his comments upon the omission of the defendant to call character witnesses; but, inasmuch as the defendant's counsel had deliberately stated to the jury that they expected to prove good character, and had the witnesses present in the court room to make the proof, the remarks of the county attorney, if important at all, could not reasonably have prejudiced the defendant's case, in view of the court's admonitions to the jury.     If he had told the jury that the defendant's character was not good, and had stated facts not in evidence, and which were reasonably calculated to influence the verdict, the point might be sufficiently well taken to require a reversal of the case; but no such condition is presented.

As to the other remarks of the county attorney, concerning the saving to taxpayers that would have followed the passage of the bill in question, granting that there was an impropriety in them, they were certainly not possibly of such an injurious character as to warrant the reversal of the case, considering the fact that the court specially charged the jury to disregard the language excepted to.

Having considered every point which we believe entitled to discussion, we find no error in the record for which the conviction should be set aside.     It is therefore ordered that the judgment and order appealed from be affirmed, and the District Court is directed to enforce its judgment.     Remittitur forthwith.

*Affirmed.*

PEMBERTON, C. J., and PIGOTT, J., concur.