STATE, RESPONDENT, v. SMITH, APPELLANT.

(No. 4,450.)

(Submitted November 17, 1920. Decided December 1, 1920.)

[194 Pac. 131.]

*Criminal Law — Sedition — Information — Insufficiency—How Question Raised—Uncertainty of Language Fatal Defect.*

Criminal Law—Information—Insufficiency—Methods of Objection.
1. Under section 9208, Revised Codes, the objection that the facts stated in an information do not constitute a public offense may be taken either by demurrer, or at the trial under a plea of not guilty, or after the trial in arrest of judgment.

Same—Information—Interpretation—Inferences not Permissible.
2. In interpreting the language used in an information, inferences, however reasonable, cannot be drawn upon to aid the pleader, and no presumption can, for this purpose, be indulged, since the legal presumption in a criminal case is that defendant is innocent.

Sedition—Information—Uncertainty—Fatal Defect.
3. *Held,* that an information charging sedition in that defendant feloniously stated that "she wished the people would revolt and that she would shoulder a gun and get the president the first one," was fatally defective for failure to meet the degree of certainty required by section 9156, Revised Codes, it being conjectural whether defendant meant the people or the president of the United States, or the people or president of any other country.

Same—Information—Seditious Language—May be Charged, How.
4. An information charging one with the utterance of seditious language need not set forth the exact words used by defendant, the pleading being permitted to allege that the language used was "in substance as follows."

*Appeal from District Court, Custer County; Chas. A. Taylor, Judge.*

JANET SMITH was convicted of sedition, and from the judgment of conviction and from an order denying a motion for new trial, she appeals. Reversed and remanded.

*Mr. Sharpless Walker* and *Mr. W. C. Packer,* for Appellant, submitted a brief, and one in reply to that of Respondent; *Mr. Walker* argued the cause orally.

The language charged in the information is insufficient in itself to constitute the crime of sedition; it contains nothing in explanation of the utterances alleged to have been made. It is not alleged that the defendant said she wished to goodness the people of the United States or of any other country would

revolt, nor that she said she would shoulder a gun and get the
president of the United States, or President Wilson, the first
one. The terms "people" and "president" are very general
terms, and when used without any qualifications, are not suffi-
ciently definite to conform to the rules of pleading in criminal
cases.

We contend, therefore, that the term "president" is such
*a general term that it cannot be understood, when standing*
alone, to apply to the president of the United States any more
than to the president of some other country or some organiza-
tion. Furthermore, even though the information had charged
the defendant with having made the utterance that she would
get the president of the United States the first one, such
utterance would not constitute sedition under the sedition laws
of the state of Montana. In this connection we desire to call
the court's attention to the fact that the president of the
United States is not mentioned in the Montana sedition law,
nor in the Federal Sedition Act. In the Act of Congress
approved July 14, 1798, it was made a crime to write, print,
utter or publish, or cause or procure to be written, printed,
uttered or published, or to knowingly, willingly assist or aid
in writing, printing, uttering or publishing any false, scanda-
lous and malicious writing or writings against the government
of the United States, or either house of the Congress of the
United States, or the president of the United States, with in-
tent to defame the said government or either house of said
Congress, or the said president, or to bring them or either of
them into contempt or disrepute, or to excite against them,
or either or any of them, the hatred of the good people of the
United States, *etc.* The president of the United States was
not included in either the federal or state sedition law now in
effect, so that it is apparent that it was not the intent of the
legislature to include within the provisions of the sedition laws
the making of scurrilous or contemptuous utterances against
the president of the United States.

The information must be direct and certain as regards the
party charged, the offense charged, and the particular circum-
stances of the offense charged, when they are necessary to con-

stitute a complete offense. (Sec. 9149, Rev. Codes; *State v. Keerl,* 29 Mont. 508, 101 Am. St. Rep. 579, 75 Pac. 362; *State v. Eddy,* 46 Or. 625, 81 Pac. 941, 82 Pac. 707; *People v. Allison,* 25 Cal. App. 746, 145 Pac. 539; *Stout v. Territory,* 2 Okl. Cr. 500, 103 Pac. 375; *State v. Flower,* 27 Idaho, 223, 147 Pac. 786; *Commonwealth v. Briggance,* 3 Ky. Law Rep. 623; *Lane v. State,* 151 Ind. 511, 51 N. E. 1056; *Zinn v. State,* 68 Tex. Cr. 149, 151 S. W. 825.) An indictment must advance its position of fact in absolute form, and not leave them to be collected by inference and argument. (*Commonwealth v. Whitney,* 71 Mass. (5 Gray) 85.) All indictments require direct, positive and affirmative allegation of every point to be proved. (*United States v. Post,* 113 Fed. 852.)

An indictment or information in a criminal prosecution for libel or slander must not only set out the defamatory matter *verbatim,* but the indictment or information must on its face profess to give the very words complained of, and we contend that the same rule applies to prosecutions for sedition. (25 Cyc. 577; *State v. Towsend,* 86 N. C. 676; *Commonwealth v. Sweney,* 10 Serg. & R. (Pa.) 173; *State v. Walsh,* 2 McCord (S. C.), 248; *Commonwealth v. Wright,* 1 Cush. (Mass.) 46, 63; *State v. Goodman,* 6 Rich. L. (S. C.) 387, 60 Am. Dec. 132; *Morris v. State,* 109 Ark. 530, Ann. Cas. 1915C, 925, 160 S. W. 387; Townshend on Slander and Libel, sec. 329.)

*Mr. S. C. Ford,* Attorney General, and *Mr. Otto Gerth,* Assistant Attorney General, for Respondent, submitted a brief; *Mr. Gerth* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

On October 11, 1918, Janet Smith was convicted of the crime of sedition and sentenced to an indeterminate term of not less than five nor more than ten years' imprisonment. She appeals from the judgment and from an order denying her a new trial.

The information herein charges that "At the county of Custer, state of Montana, on or about the first day of June, 1918, and during a state of war existing between the United

States and Germany, the defendant did, unlawfully, willfully, wrongfully, seditiously and feloniously, utter disloyal, false and contemptuous language, * * * calculated to incite and inflame resistance to the duly constituted state and federal authorities in connection with the war, which language was in substance as follows, to-wit.'' Then follows a number of alleged seditious utterances, but as the prosecution was required to, and did, elect on which charge it would rely for a conviction, we are not concerned with other than the single charge that she stated: ''She wished to goodness the people would revolt and that she would shoulder a gun and get the president the first, one.''

No demurrer, either general or special, was interposed; but on the opening of the state's case, counsel for the defendant objected to the introduction of any evidence in support of the charge, on the ground, among others, that ''the information does not state facts sufficient to constitute a crime or public offense.''

1. On the court's action in overruling this objection, [1] defendant predicates error. The objection that the facts stated do not constitute a public offense may be taken either by demurrer or at the trial, under a plea of not guilty, or after the trial, in arrest of judgment. (Sec. 9208, Rev. Codes.)

The sufficiency of the information is to be tested by applying the rules laid down in section 9156, Revised Codes, declaring, in effect, that an information is sufficient if it can be understood therefrom that the act charged as an offense is set forth in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended, and is stated with such a degree of certainty as to enable the court to pronounce judgment upon a conviction, according to the right of the case. (*State* v. *Bloor*, 20 Mont. 574, 52 Pac. 611.)

''If it be borne in mind that the common law is in force in this state, except so far as it has been supplanted by our Codes, the conclusion cannot be escaped that the provisions of the Penal Code cited, * * * and others germane to the subject, while dispensing with mere matters of form, still re-

quire all the substantial allegations necessary under the common-law rule." (*State* v. *Beesskove,* 34 Mont. 41, 50, 85 Pac. 376, 377.)

In elucidation of the common-law rule as to "certainty," the author on the subject in Cyc. has this to say:

"*Certainty.*—Being free from doubt; absence of doubt; a clear and distinct setting down of facts so that they can be understood both by the party who is to answer the matters stated against him, the counsel who are to argue them, the jury who are to decide upon their existence, and the court who are (is) the judges (judge) of the law arising out of them. While it has been said that we have no precise idea of the signification of the word, which is as indefinite in itself as any word that can be used, a distinction has long been made between three manner of certainties: (1) To a common intent; (2) to a certain intent in general; (3) to a certain intent in every particular." And in the notes appended, we find: "The first intent is sufficient in bars which are to defend the party and excuse himself; the second is required in indictments, counts, replications, etc., because they are to accuse or charge the party; the third is rejected in law. (Citations.) Certainty to a common intent describes the mode of statement in which words are used in their ordinary meaning, although by argument or inference they may be made to bear a different one. (Abbott's Law Dictionary.) Certainty to a certain intent, in general, is held to mean, what upon a fair and reasonable construction may be called certain, without recurring to possible facts, which do not appear. (Citing cases.)" (6 Cyc. 727.) And, in regard to pleading statutory offenses, the rule is well stated in 22 Cyc., page 335, as follows: "The general rule is that the charge must be so laid in the indictment as to bring the case precisely within the description of the offense as given in the statute, alleging distinctly all the essential requirements that constitute it. Such facts must be alleged that, if proven, defendant cannot be innocent."

Here we have the charge that the defendant said that **[2, 3]** "She hoped to goodness the people would revolt, and that she would shoulder a gun and get the president the first

one.'' Does such a charge meet with the requirements above announced? In reading the charge, in order to say that a crime has been committed in making the statement attributed to the defendant, we must infer that she spoke of the people of the United States, and presume that her reference to ''the president'' was directed at the president of the United States. It may be that the evidence to be introduced, the facts and surrounding circumstances, the whole of the conversation in which the statement was made, would clearly establish the fact that such was the case, and the inference may be reasonable and the presumption so indulged in may be fairly drawn from the alleged statement. But in the pleadings in criminal cases, inferences, however reasonable, cannot be drawn upon to aid the pleader, and no presumption can, for this purpose, be indulged in, as the legal presumption in criminal cases is that the defendant *is* innocent.

In Oregon, under a statute similar to ours, an information was filed attempting to charge the crime of robbery, but failed to state positively that the defendants were the persons who used force and fear to secure the money taken, and the court said: ''It may be inferred, from the statement   *   *   *   'that the said money was then and there unlawfully and feloniously taken from the person of the said William Dompire,' that, since it had been charged in the first clause that the defendants 'did then and there unlawfully and feloniously take from the person of William Dompire' certain moneys, the defendants were the persons charged with using force and fear to secure the money.   *   *   *   But the rules of criminal pleading forbid that resort should be had to an inference, however reasonable, to interpret the language of a formal charge, where certainty is demanded by statute. The indictment is not specific in respect to the party charged with using force, which was a particular circumstance of the crime of robbery, and necessary to aver in order to constitute a complete offense.'' (*State* v. *Eddy,* 46 Or. 625, 81 Pac. 941, 82 Pac. 707.)

And in *People* v. *Allison,* 25 Cal. App. 746, 145 Pac. 539, the rule is laid down that ''While an indictment will be held suffi-

cient where the crime is substantially alleged in the words of the statute, or their equivalent, nevertheless, if the facts stated are capable of two constructions upon one of which the facts might be true and not constitute a crime, then it is insufficient in charging the offense. The indictment cannot be aided by presumption, since all presumptions are in favor of innocence, and if the facts stated may or may not constitute a crime the presumption is that no crime is charged." To the same effect, see *People* v. *Miles,* 9 Cal. App. 312, 101 Pac. 525; *People* v. *Terrill,* 127 Cal. 99, 59 Pac. 836.

In the case of *State* v. *Keerl,* 29 Mont. 508, 101 Am. St. Rep. 579, 75 Pac. 362, this court, after commenting upon our statute requiring certainty, said: "It is not permissible to convict the defendant upon mere inferences; he must be directly, plainly and specifically charged with the commission of a certain crime."

If the language alleged to have been used by defendant could have but one meaning and could refer only to the people of the United States and the president of the United States, then, and only then, would the information charge a certain crime. But the word "people" might refer to the members of any given community or country, and the word "president" to the head of this or any other country having a republican form of government, or to that of any corporation or society. Just prior to the recent general election there was considerable talk, on the one hand, that certain "big interests" had political control of the state, and, on the other, of the threatened control by farmer-labor organizations. Each of such organizations, presumably has a "president," and the statement attributed to the defendant might, by some stretching of the imagination, refer to the one or the other. Certainly, the wish that the people would revolt against such control, and the threat to get the president of any such body, would not be "sedition," whatever else it might be in the state of Montana. The illustration demonstrates the fallacy of contending that the information comes within the rule that the allegations must be such that, if proven, and nothing more appears, "the defendant cannot be innocent," for the want

of material allegations cannot be aided by proof, argument, or inference, nor by the conclusion "contrary to the form of the statute." (22 Cyc. 336.)

The case of *State* v. *Wyman*, 56 Mont. 600, 186 Pac. 1, is not, as counsel contends, in point, for there there was no question as to what soldiers the defendant referred to, but merely what was the effect of the statement charged as having been made concerning our soldiers, if proven.

The information is fatally defective in that it does not conform to the statutory rule requiring certainty in this regard.

2. A further objection to the information is urged because [4] of the expression used, "which language was in substance as follows." Counsel for the defendant contends that the rule in slander and libel should control in sedition cases, which rule is stated in 25 Cyc. 577, as follows: "An indictment must set out the defamatory matter *verbatim;* to give the substance is not sufficient. Moreover, the indictment must profess on its face to give the very words complained of." While the rule, as stated, is followed in many jurisdictions in slander and libel cases, it is not the universal rule, and absolute accuracy is not always required. A distinction is drawn between an attempt to give the substance of a statement, while not attempting to quote *verbatim,* and the recitation of the pleader's idea of the purport of the statement. (*O'Donnell* v. *Nee* (C. C.), 86 Fed. 96; *Lee* v. *Kane,* 6 Gray (Mass.), 495; *Clay* v. *Brigham,* 8 Gray (Mass.), 162.)

Even in libel cases it is not always necessary to allege the exact language used. Thus in Wharton's Criminal Procedure, volume 1, section 221, it is stated that, where the charge is for a published and written article, if such article has become lost or is in the possession of the defendant, the tenor, effect or substance thereof may be set forth in the pleading.

Without deciding whether the rules laid down for the government of the pleader in libel and slander cases apply in cases such as the one under consideration, we are of the opinion that the allegations of the information in effect charge the exact statement alleged to have been made by the defendant, without, however, vouching for the very words in which it was

couched. The pleader must rely upon the memory of witnesses, and although it may be found that the phraseology used in the charge differs in unimportant particulars from that used by the defendant, if it does appear that the words charged were "in substance" the same as those employed, a conviction would be justified, provided the offense was otherwise properly pleaded. In other words, a defendant manifestly guilty of the utterance of seditious language would not be permitted to escape the just punishment for his crime, merely through a defect in the memory of the witness, as to the use of words meaning, for all practical purposes, the same thing as those incorporated in the information, and therefore the pleader should be permitted to allege that the language used was "in substance as follows," thus guarding against a possible divergence in phraseology, but, in effect, charging the use of the exact language employed.

3. Other specifications of error urged are based on the court's refusal to strike certain testimony which, it is contended, was not properly connected up; but, owing to the disposition made of the case, it will not be necessary to discuss them here.

The judgment and order are reversed and the cause is remanded to the district court for further proceedings.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY, HURLY and COOPER concur.