## GENERAL COURT, OCTOBER TERM, 1802.

### CUMMINGS vs. THE STATE.

A felony committed in another state, where the felon with the stolen goods is arrested in this state, is cognizable by the courts of this state

*Quere.* Whether a writ of error is the proper process for renewing a criminal prosecution?

*Quere.* As to the manner of certifying the proceedings to the court of appeals in a criminal prosecution?

A writ of error must be directed to the inferior court by its proper style

A writ of error quashed because it was not produced to and allowed by the inferior court until after the return day of the writ

WRIT OF ERROR, issued on the 7th of October, 1802, directed "*To the Worshipful Justices of the Criminal Court of Baltimore County,*" for the removal of a criminal prosecution to the general court, and returnable on the *second Tuesday* of the said month of October. The record as transmitted states, that the writ of error was on the *14th of October* 1802, produced, and according to the act of assembly in such case made and provided, a record, &c. is transmitted, &c. By the record it appears, that *Cummings,* was, "*at a court of oyer and terminer and gaol delivery for Baltimore county,*" held in the city of Baltimore on the second Monday in July 1802, indicted for and convicted of stealing a black mare, &c. and was sentenced by the court to work on the public roads two years and three months.

The verdict of the jury was subject to the opinion of the court on the following facts: That *John Cummings,* the prisoner, on the 8th of May 1802, in the county of Chester, in the state of Pennsylvania, with force and arms feloniously stole, took and carried away, a black mare of the value of 20*l.* 5*s.* 0*d.* current money of Maryland, of the goods and chattels of *Richard McIlvain.* That the said *John Cummings* on the 10th of May, in the said year, feloniously brought the said mare to Baltimore county in the state of Maryland; and the said *Cummings,* on the 11th of May in the said year, was arrested for the said felony at Baltimore county aforesaid. And if the court shall be of opinion, on the matter aforesaid, that this court hath jurisdiction to hear and determine on the felony aforesaid, then judgment to be given for the state; and if the court shall be of opinion that it has not jurisdiction in the aforesaid case, then judgment to be given for the prisoner; and on this statement it is agreed that a writ of error may be brought upon the judgment as if these facts had been found on a special verdict.

THE COURT of Oyer and Terminer, &c. gave judgment upon the case stated for the State; and the prisoner brought a writ of error. The record of proceedings was certified and attested by the clerk in the usual manner of attesting proceedings in civil proceedings.

*Martin*, (Attorney General,) moved to quash the writ of error, and the return thereto. He contended that there was no legal return of the record—the transcript not being signed by the justices of the court. That it had never been decided that a criminal proceeding could be removed by writ of error: That if the writ lies, it has not been directed to the proper court, for there is no such court as the *criminal court*, &c.

*Harper*, for the plaintiff in error, cited the cases removed by the attorney general himself, at the suit of the State, which had been by writs of error, and said that the practice had been in all cases of removals, to transmit the record under the hand of the clerk and seal of the court. He cited also the case of *Negro Peter vs. The State*, (4 *Harr. & M'Hen.* 3,) which was removed by writ of error, and reversed in May 1797. Also the case of *Barnes vs. The State*, affirmed at October term 1797, on argument, which was also removed by a writ of error, and the present chief judge and Mr. *T. Stone*, were counsel for the plaintiff in error. Also *Harrison vs. The State*, reversed at October 1794, which was an appeal from Saint Mary's and Mr. *J. A. Thomas* was counsel for the appellant. Also *Power vs. The State*, removed by writ of error, and reversed at October 1793, Mr. *Key* being counsel for plaintiff in error. In all these cases the records were certified by the respective clerks, and were not signed by the justices. The act of 1713, *ch.* 4, does not make it necessary for the court to allow the writ of error. It is different in case of a *certiorari* or *habeas corpus*. The 5th *sect.* of that act directs, that in case of an appeal it must be made in court, and the record cannot be removed

unless the court grant the appeal—but a writ of error is imperative to the court to which it is directed, and to that to which it is to be returnable. It is a writ which emanates from chancery, and courts must obey it.

*Martin,* (Attorney General,) in reply. It appears by the writ of error that it issued on the 7th, and was returnable on the second Tuesday of October. The writ was produced to the court below on the 14th, after the return day had elapsed, and the record was returned to and filed in this court on the 25th. The record has not been correctly returned, for the writ of error was directed *to the justices,* and not to *the clerk,* and the clerk has certified; whereas, the justices ought to have certified. For if process to compel a return of the writ be necessary, it must go to the court, and not to the clerk.

In the case of *Martin vs. The State,* the writ of error was produced to and *allowed by the court,* and is so stated in the record. It was an act of the court, done in court. The act of 1713, *ch.* 4, only relates to civil and not to criminal cases. The state is not bound by the act of limitations, nor subject to the act limiting the jurisdiction of the general court as to debts due to the state under £10, so determined in the eastern shore general court in the cases of the state against its debtors in Cecil county. A fatal objection is, that the writ of error has not pursued the style of the court correctly. It should have been directed to the court of oyer and terminer, &c.

CHASE, Ch. J. cited the cases of *Jenifer vs. The Lord Proprietary,* at September term 1774, and *Gale vs. The Lord Proprietary,* at April term 1772, where the question had been argued, that an *appeal* would not lie in a criminal case; but he did not know that the point was decided by the court*(a).*

*(a)* See the case of *Jenifer vs. The Proprietary,* (1 *Harr. & M`Hen.* 535.) The case of *Gale vs. The Proprietary* (April term 1772.) was an *appeal* from Somerset county court in a *criminal case,* and four objections were made by *Jenings,* (attorney gene-

*Harper* moved for and obtained a writ of diminution to the court below, for the purpose of getting the ral) against the appeal    1st  That the act of 1713, *ch.* 4, speaks of appeals wherein bonds *may* be given according to the directions of that act.  2d. It limits the appeal to judgments wherein the *debt* or *damage* does not exceed a certain sum.  3d. It directs that the party appealing shall get a transcript, &c    4th. The Lord Proprietary not being named therein, is not bound by the general words of the act

It was answered by the counsel for the appellant—That if a writ of error would lie in this case, it would follow that an appeal would lie.    That a writ of error will lie for the party grieved by an erroneous judgment at the suit of the king—*Fitz. N  B.* 21 *H·* 1 *Salk.* 264, *pl.* 9   2 *Leon* 194    The act of 1713, *ch.* 4, recites the great benefit of appeals and writs of error, and speaks of the appeal as a mode of proceeding then in use    There is no such thing as an appeal in England from the common law courts —but it is there used in the ecclesiastical courts, and from thence seems to have been introduced here.  Its convenience is manifest; it saves trouble and expense.

As to the 1st *and* 2d *objections.*—"That the act provides that no execution shall be stayed unless bond be given."  It does not require bond to be given, and therefore the party may appeal without bond, remaining subject to execution; nor does the law confine the appeal to a case where bond may be given, as will appear upon consideration of the next section of the act, and the construction which it has always obtained.    That section takes away the appeal, &c. where the debt or damage is under a certain sum.    And yet it is every day's practice to appeal in *eject-ment* where there is neither debt nor damages recovered    If it is said an ejectment is a case out of the act, and that a writ of error will lie independent of it, it will be admitted; but it is this act only which gives *appeal*    And may it not be said with equal propriety that the act intended to confine the appeal to cases where debt or damage was recovered, as to cases where bond might be given?  And if in use and  practice the contrary construction has obtained in one case, why should it not in the present case?  But why may not bond be given in this case?  The judgment is for a sum of money    The statutes of 13 *Car. II. ch* 2, and 16 *and* 17 *Car. II. ch* 8, *sect.* 2, provide, (as this act does) that no execution shall be staid, &c. unless recognizance, &c. be given.    But there are provisos that those acts shall not extend to *indictments,* &c from whence it may be inferred the opinion of the legislature that they would have extended to indictments without the proviso.    In our act then there is no proviso excepting indictments.

As to the 3d *objection*   As to the word *party* used by the act, The word person is made use of in the statute 3 *Jac* 1 *ch.* 8, & *ch.* 13, 2, to which the objection will be as strong—11 *Rep* 70.  The writ of error removes the record itself. *Fitz. N. B.* 20 *F.* 1 *Roll. Ab.* 752.  8 *Bac. Ab* 202.

As to the 4th *objection*    To shew the king was bound by general words in a statute.  He cited 11 *Rep.* 72, *a.*  5 *Rep.* 14, *b.* 2 *Inst.* 681.  11 *Rep.* bound by statute *de donis,* &c.

No decision however, was  had in this case, as by the death of the appellant it *abated.*

In the case of *Davidson vs. The King,* in the provincial court at October 1704,  on a conviction in a criminal case, it was objected by *T. Bordley,* (Attorney General,) that a writ of error did not lie in that case: and answered by *Dulany,* for the plaintiff, that a writ of error was a remedial writ and lay in every case *ex merito Justitia*    He cited *Sho.* 13, 260   1 *Lev.* 149. *Hob* 116. *Vent* 30, 34, 353, 42, 203. 1 *Leon.* 325  *Salkeld. Walcott's* case. 1 *Lev.* 189. 1 o *Latt.* 260 *a.*

This case also *abated* in the court of appeals at April term 1722.

justices to certify the record; and on the 12th of November, a record was returned, certified by the justices of the court.

But as the return day of the writ of error had elapsed before said writ was presented to, and allowed by the court,

THE GENERAL COURT *quashed* the writ of error.