STATE, APPELLANT, *v.* KIEF, RESPONDENT.

[Argued November 14, 1891.   Decided April 18, 1892.]

LARCENY—*Property stolen in another country—Proofs.*—In order to support a conviction for larceny under section 85, fourth division of the Compiled Statutes, where the indictment charged that the goods were feloniously stolen in Canada and afterwards brought into a certain county of this State where the defendant did feloniously steal them, it is not necessary for the State to prove by the laws of Canada that the taking of the property was "feloniously stealing" in that country, as the term "feloniously" as used in the indictment must be defined according to the statute of this State. The laws of Canada are not an element of the offense charged against the defendant. (DE WITT, J., dissenting.)

*Appeal from Seventh Judicial District, Dawson County.*

Indictment for larceny. The defendants were tried before MILBURN, J., who directed a verdict of not guilty.

*Henri J. Haskell,* Attorney-General, and *Strevell & Porter,* for the State, Appellant.

*Middleton & Light,* for Respondent.

BLAKE, C. J.—The indictment alleges that: "Richard Kief, at Wolsey, and within the Dominion of Canada, on the thirteenth day of August, A. D. 1888, did feloniously steal, take, and

carry away the following described personal property [description of mares], the property of Robert Mitchell, the said Robert Mitchell then and there, to wit, at the date last aforesaid, residing at Wolsey, within the said Dominion of Canada, which said property was of the value of two hundred dollars; and that he, the said Richard Kief, did afterwards, and on the twenty-second day of October, A. D. 1888, bring the said property, above described, into the said county of Dawson, in the then Territory of Montana (now State of Montana), and that he, the said Richard Kief, did then and there, to wit, at the said county of Dawson, then Territory (now State) of Montana, on the said twenty-second day of October, A. D. 1888, feloniously steal, take, and carry away the said personal property above described [description of mares]; the same being then and there the property of the said Robert Mitchell, and which said property was then and there of the value of two hundred dollars. All of which is contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Montana."

It is conceded by counsel that this indictment has been framed under the following statute: "Every person who shall feloniously steal the property of another in any other State, Territory, or country, and shall bring the same into the Territory of Montana, may be convicted and punished in the same manner as if such larceny had been committed in this Territory; and, in every such case, such larceny may be charged to have been committed in any county into which or through which such stolen property shall have been brought." (Comp. Stats. div. 4, § 85.)

Upon the trial the court instructed the jury to return a verdict of not guilty, upon the ground that no evidence had been offered to prove that the taking of the property in Canada was a violation of the law of that country. The State brings this ruling before us on appeal.

To comprehend this question the doctrine of the common law should be considered, and the necessity for this statute examined. Mr. Russell, in his work on Crimes, says: "It should be further observed that there are some exceptions to the rule that a larceny is committed in every county or jurisdiction into

which the thief carries the goods; for if the original taking be such whereof the common law cannot take cognizance, as if the goods be stolen at sea, the thief cannot be indicted for the larceny in any county into which he may carry them. So if a larceny be committed out of the kingdom, though within the king's dominions, bringing the stolen goods into this kingdom will not make it larceny here. . . . . So if a larceny be committed in France the party cannot be tried in England, though he bring the goods here. A similar exception prevailed formerly where the original taking was in Scotland or Ireland; and it appears to have been holden that a thief who had stolen goods in Scotland could not be indicted in the county of Cumberland, where he was taken with the goods." (Vol. 2, *119.)

There has been a conflict in the courts of the States of the Union in the application of this principle of the common law. It was held as early as the year 1794, in *State* v. *Brown*, 1 Hayw. (N. C.) 100; 1 Am. Dec. 548, that a party who stole a horse in the territory south of the Ohio could not be convicted of larceny in the State of North Carolina, to which he had taken the property. In *People* v. *Gardner*, 2 Johns. 477, it appeared that the defendant had been convicted of felony in the State of New York for stealing a horse, which was originally taken in the State of Vermont. The Supreme Court, in the year 1807, said: "We are of opinion that the prisoner cannot be tried for this offense in this State. When the original taking is out of the jurisdiction of this State the offense does not continue and accompany the possession of the thing stolen, as it does in the case where a thing is stolen in one county, and the thief is found with the property in another county. . . . . The prisoner can be considered only as a fugitive from justice from the State of Vermont." To the same effect is *People* v. *Schenck*, 2 Johns. 479. By reason of these decisions a statute, of which section 85, *supra*, is in substance a copy, was enacted. In *People* v. *Burke*, 11 Wend. 129, which was decided in the year 1834, Chief Justice Savage cited this statute and said: "That the statute is constitutional, and within the proper sphere of legislative action, I cannot doubt. It is not justly liable to the objection that we undertake to punish offenses committed against another government. It is not the larceny in Canada which we

punish, but the larceny committed in the State of New York, in every place into which the stolen property has been brought. In this respect the statute recognizes the common law, by which the possession of stolen property, in contemplation of law, remains in the owner, and the thief, therefore, is guilty of theft in every place into which he carries the stolen goods." The statement contains these facts: "The prisoner was indicted for grand larceny, being charged with having stolen money in the town of Gates, in the county of Monroe, in this State, at the general sessions in which county he was tried. On the trial it appeared that the money in question was stolen by the prisoner at York, in Upper Canada, from which place he came to the town of Gates, where a part of the stolen money was found in his possession." The doctrine of *People* v. *Gardner, supra,* has been approved by the courts of several States. (*Simmons* v. *Commonw.* 5 Binn. 617; *Simpson* v. *State,* 4 Humph. 456; *Beal* v. *State,* 15 Ind. 378.) In *Stanley* v. *State,* 24 Ohio St. 166; 15 Am. Rep. 604, it was held that a thief who brings stolen goods from the Dominion of Canada into the State of Ohio does not commit larceny within the State. In *Commonw.* v. *Uprichard,* 3 Gray, 434; 63 Am. Dec. 762, it was held that a person who stole goods in the province of Novia Scotia, and brought them to the State of Massachusetts, could not be convicted of larceny under the laws of the State. The same court, however, in *Commonw.* v. *Holder,* 9 Gray, 7, held that the stealing of goods in the State of Rhode Island, and bringing them into the State of Massachusetts, was punishable as larceny in the latter. This ruling had been announced in *Commonw.* v. *Cullins,* 1 Mass. 116, and *Commonw.* v. *Andrews,* 2 Mass. 14; 3 Am. Dec. 17. See, also, *Reg.* v. *Madge,* 9 Car. & P. 29; 3 Greenleaf on Evidence [14th ed.], § 152; 1 Bishop on Criminal Law [4th ed.], §§ 107–109; *Commonw.* v. *Macloon,* 101 Mass. 1; 100 Am. Dec. 89; 2 Wharton's Criminal Law [6th ed.], §§ 1812–1817; *State* v. *Brown,* 8 Nev. 208.)

In *Commonw.* v. *Cullins, supra,* Mr. Justice Sedgwick said: "The court were clearly of opinion that stealing goods in one State, and conveying the stolen goods into another State, was similar to stealing in one county and conveying the stolen goods into another, which was always holden to be felony in both

counties." This doctrine has been recognized in numerous decisions. (*Cummings* v. *State*, 1 Har. & J. 340; *Hamilton* v. *State*, 11 Ohio, 435; *State* v. *Bartlett*, 11 Vt. 650; *State* v. *Underwood*, 49 Me. 181; 77 Am. Dec. 254; *Watson* v. *State*, 36 Miss. 608; *State* v. *Ellis*, 3 Conn. 185; 8 Am. Dec. 175; *State* v. *Bennett*, 14 Iowa, 479.)

In *State* v. *Bartlett, supra*, it appears that, "upon the trial in the court below, testimony was introduced, tending to show that the respondent stole the oxen in the province of Lower Canada, and drove them into this county where he sold them." The indictment is not published in the report. Mr. Justice Redfield, in the opinion, said: "The only remaining ground urged by the respondent's counsel is that an indictment for larceny cannot be sustained here, where the original caption was in the province of Canada. If this question were entirely new, and to be now decided upon the weight of authority at common law, I confess I should incline to the view taken by the respondent's counsel; for it is expressly laid down by all the English law writers upon this subject." The court then quotes from Russell on Crimes, *supra*, and proceeds: "But in this State the rule has been too long settled, and recognized by too long and uniform a course of practice and decision to be now changed, unless it be by act of the legislature." In *State* v. *Underwood, supra*, the indictment charged the defendants with the crime of larceny. In the statement the reporter says: "The articles stolen were alleged to be the property of one Christian Brahn, and the evidence on the trial sustained the allegation. It was alleged in the indictment that the property was stolen from said Brahn 'at Eastport, in the county of Washington.' There was testimony to prove that the property was stolen from the owner from a vessel to which he belonged, then at St. Andrews, in the province of New Brunswick; that the defendants were followed to Eastport, and the property found in their possession." The court, by Mr. Justice Hathaway, said: "The allegations in the indictment were that they stole certain goods in the county of Washington, the property of a certain person named. It was necessary for the government to prove the property in the goods, and all the material allegations, in the indictment, as alleged. It was incumbent on the government to prove that

the defendants actually took and carried away the goods feloniously in that county, or had such felonious possession of them there as would, according to the laws of this State, constitute, 'in legal contemplation,' a felonious caption."

Mr. Bishop, upon this subject, writes: "Since larceny consists of any asportation of the goods of another through trespass, by one who simultaneously means to steal them, the complete offense is committed in every locality in which such asportation, trespass, and intent to steal concur. So that the same goods may thus be stolen successively, by the same person, in as many countries, States, and counties as he can carry them into or through; and he may be indicted in any place wherein these things transpired together, within the jurisdiction of the prosecuting power, at its election. Such is the doctrine of principle, judicially sustained in a part of our States. . . . . No judge has maintained, in words, that the laws of a foreign State or country could so operate with us as to exempt a man from punishment for violating our own laws on our own soil, yet many have held this, in effect, refusing to convict one of the larceny of goods in our own State if he had first stolen them in another State or country, from which he brought them here." (Bishop's Directions and Forms, § 607.)

Statutes had been enacted in England, and in many States of the Union, to remove every doubt relating to this question of jurisdiction, and punish parties who have been guilty of acts, which have been described in the cases already cited. The foregoing section of our criminal laws, which was enacted February 23, 1887, belongs to this class of legislation. We have already referred to the opinion of the court upon this statute in *People* v. *Burke, supra.* In *Commonw.* v. *Macloon, supra,* Mr. Justice Gray said: "Yet, if the legislature see fit to provide that the bringing into the State of goods taken without right from the owner in a foreign country shall be punished here as larceny, it is within their constitutional authority to do so." In *Hemmaker* v. *State,* 12 Mo. 453; 51 Am. Dec. 172 (decided in the year 1849), Judge Napton, for the court, said: "Our statute was obviously intended to punish offenses committed against our criminal laws, and not those which were committed without the jurisdiction of the State. If the legis-

lature think it expedient to declare that a person who is guilty of grand larceny in another State or country, and brings within our jurisdiction the stolen goods, shall be considered as guilty of grand larceny here, it is clearly within their constitutional power to make such enactment. . . . . The legislature punish the offense committed in this State by bringing the stolen property into it, and in doing so, they merely codify a settled principle of the common law, applicable to different counties, and extend it here to neighboring States and foreign countries." In *State* v. *Butler*, 67 Mo. 61, which was determined in the year 1877, it was urged that this statute was unconstitutional; but the case of *Hemmaker* v. *State, supra*, was affirmed. (See, also, *People* v. *Williams*, 24 Mich. 156; 9 Am. Rep. 119.)

Most of the precedents of indictments in reports do not set forth the facts which occurred in any foreign country or State. (*People* v. *Burke, supra; Hemmaker* v. *State, supra; State* v. *Underwood, supra; State* v. *Newman*, 9 Nev. 48; 16 Am. Rep. 3; *State* v. *Barnett*, 15 Or. 77.) Mr. Bishop writes: "Under the correct doctrine, it not being important to consider the other cases, the sufficient and better way is to frame the indictment without any reference to what took place in other localities, simply for the larceny in the county of the jurisdiction. Where, as in some States, there is a statute on the subject, its terms will, of course, if it is the foundation of the proceeding, be pursued." (Directions and Forms, § 608.) Our statute, *supra*, declares that "such larceny may be charged to have been committed in any county into which or through which such stolen property shall have been brought." This indictment alleges that Kief "did feloniously steal, take, and carry away" the property of Mitchell, within the Dominion of Canada, and bring the same into the said county of Dawson.

What is the difference, if any, in the meaning of the word "feloniously," which is employed in two clauses of the indictment? This is the decisive point which determines the rule of proof which should govern the court upon the trial. We confess that the authorities cannot be reconciled, and that the question is environed by extreme difficulties. The court below evidently followed *Commonw.* v. *Uprichard, supra*, and *Stanley* v. *State, supra*, in which the facts relating to the stolen prop-

erty are like those of the case at bar.   Chief Justice Shaw, in
*Commonw.* v. *Uprichard, supra,* said :  " Laws to punish crimes
are essentially local, and limited to the boundaries of the State
prescribing them.   Indeed, this case and the cases cited proceed
on the ground that the goods were actually stolen in this State.
The commission of the crime in Nova Scotia was not a viola-
tion of our law, and did not subject the offender to any punish-
ment prescribed by our law.   This indictment proceeds on that
ground, and alleges the crime of larceny to have been committed
in violation of the laws of this commonwealth, and within the
body of this county.   It is only by assuming that bringing
stolen goods from a foreign country into this State makes the
act larceny here that this allegation can be sustained ; but this
involves the necessity of going to the law in force in Nova
Scotia to ascertain whether the act done there was felonious,
and consequently whether the goods were stolen.   So that it is
by the combined operation of the force of both laws that it is
made felony here. . . . . But what are stolen goods?   Are
we to look to our own law, or to the law of Nova Scotia, to
determine what is a felonious taking, what is the *animus furandi,*
and the like?   If we look to the law of Nova Scotia, and that
law is different from ours, in defining and prescribing theft,
then we may be called on to punish as a crime that which
would be innocent here.   If we look to our own law, then a
taking and carrying away of goods in Nova Scotia under circum-
stances which would not be criminal there might be punishable
here."   Judge McIlvaine, for the court, in *Stanley* v. *State,*
*supra,* said :  "The theory of the law, upon which the propriety
of the conviction is claimed, is based on the assumption that the
property was stolen in Canada by the prisoner.   By what rule
shall it be determined whether the acts of the prisoner, whereby
he acquired the possession of the goods in Canada, constituted
the crime of larceny?   By the laws of this State?   Certainly
not.   The criminal laws of this State have no extra territorial
operation.   If the acts of the prisoner, whereby he came in
possession of the property described in the indictment, were not
inhibited by the laws of Canada, it is perfectly clear that he
was not guilty of larceny there.   It matters not that they were
such as would have constituted larceny if the transaction had

taken place in this State. . . . . I have no doubt the legis-
lature might make it a crime for a thief to bring into this
State property stolen by him in a foreign country; and, in
order to convict of such crime, it would be necessary to prove
the existence of foreign laws against larceny. The existence of
such foreign laws would be an ingredient in the statutory of-
fense." Our legislative assembly has defined the crime which
the learned judge mentioned in his opinion, and these decisions
of Massachusetts and Ohio hold that the laws of the foreign
country do constitute a material element thereof.

Upon the other hand, the court in *Hemmaker* v. *State, supra,*
said: "In the determination of the character of the offense,
there is no necessity for inquiring what may be larceny under
the laws of the country where the offense was committed." In
*State* v. *Underwood, supra,* the court further said: "The laws
of the foreign country are not included among the·elements
which constitute the crime for which the defendants were in-
dicted. They were not charged with violating the laws of the
foreign country, and those laws could not be legally introduced
on the part of the prosecution in the proceedings against the
defendants. Whether or not the defendants were guilty of
stealing the goods must be first determined according to our
laws concerning larceny; and, if they were thus guilty, then
the guilty possession of the goods here was larceny here." In
*People* v. *Staples,* 91 Cal. 23, the defendant was convicted of
the crime of grand larceny in the Superior Court of the county
of Los Angeles; and Chief Justice Beatty, in the opinion, said:
"The information charges, in plain, direct, and unequivocal
terms, that the defendant did, in the Territory of Arizona, un-
lawfully, wilfully, and feloniously take, steal, and carry away
from the possession of one Margaret McGregor a watch and
chain of the value of seventy-five dollars, then and there being
the personal property of said Margaret McGregor, and that,
after having so unlawfully taken and stolen said watch and
chain, he did bring the same into the county of Los Angeles.
This states the exact offense defined in section 497 of the Penal
Code, the jurisdiction of which is, by section 789, conferred upon
any county of the State into or through which the stolen prop-
erty has been brought. . . . . It is contended that the evidence

does not sustain the verdict because (1) there was no evidence as to the laws of Arizona defining larceny. . . . . As to the first objection, we say that the laws of Arizona have no bearing upon the question whether our laws have been violated. We do not assume to punish offenses against the laws of other States and Territories. When we undertake to punish as larceny the bringing into this State goods that have been stolen in another State or country, we mean goods that have been stolen according to our definition of larceny, for which we look to our own laws exclusively, and not the laws of other countries." The sections of the Penal Code which are referred to in the opinion of Chief Justice Beatty are similiar to section 85, *supra.*

We have endeavored to present fairly the views of the jurists upon both sides of this long controversy, and it is not possible to add anything to the arguments, which have been exhaustive and profound. We have concluded that the intention of the legislative assembly can be most effectually enforced by adhering to the doctrine that the term "feloniously," in the indictment, should be defined according to the statute of this State, and that the laws of the Dominion of Canada do not enter into the offense charged against Kief, and are therefore inadmissible. It is competent to introduce testimony as to the conduct of Kief with relation to the property described in the indictment, both in Canada and Dawson County. The court below committed an error in its ruling and instructions to the jury.

It is therefore ordered that the judgment be reversed, and that the cause be remanded for a new trial.

*Reversed.*

HARWOOD, J., concurs.

DE WITT, J.—The rule as laid down by the opinion of the court seems to be sustained by authority, and has the virtue of practicability, but I doubt the logic of the conclusion. Defendant is charged with feloniously stealing the property in the Dominion of Canada, and bringing it into this State, which is an offense by statute. What is "felonious stealing" in Canada? It would seem that there is one method only of answering this question; that is, to ascertain from the laws of Canada what "felonious stealing" is in that country. (See

Chief Justice Shaw, in *Commonw.* v. *Uprichard*, 3 Gray, 434; 63 Am. Dec. 762, and an able opinion and review of the authorities in *Stanley* v. *State*, 24 Ohio St. 166; 15 Am. Rep. 604.)