STATE, RESPONDENT, *v.* DE WOLFE, APPELLANT.

(No. 1,849.)

(Submitted January 6, 1904. Decided January 23, 1904.)

| 29 | 415 |
| f34 | 28 |
| 34 | 588 |
| 29 | 415 |
| 35 | 465 |
| 35 | 546 |
| 29 | 415 |
| e37 | 17 |
| 29 | 415 |
| d41 | 448 |

*Grand Larceny—Information—Time for Answer—Refusal— Error—Venue—Horses — Brands — Ownership—Proof— Variance — Conspiracy—Declarations of Co-Conspirators— Proof — Accessories — Instructions — Statutes — Right of Counsel to Appear—Question for Court.*

1. Under Penal Code, Section 1893, defining an arraignment, and requiring a "copy" of the information to be delivered to defendant, a true copy is meant.

2. Defendant in a prosecution for grand larceny raised the objection that the copy of the information furnished him was materially different from the information on which he was about to be tried, which objection the court sustained, and required defendant to be furnished with a true copy, whereupon defendant requested the statutory time in which to plead. *Held,* that a refusal of the request constitutes reversible error, under Penal Code,

Section 1893, providing that, "if on arraignment the defendant requires it, he must be allowed a reasonable time, not less than one day, to answer the information ;" the record showing that no plea was entered at the trial.

3.   Where the state, in a prosecution for larceny of horses, tries the case on the theory that the horses were stolen in pursuance of a conspiracy between defendant and others, proof of declarations of defendant's co-conspirators must be confined to those made while the conspiracy was pending, and in furtherance of it.

4.   Where defendant was charged with stealing horses bearing certain brands, proof that one one of the brands belonged to H., and that the horses bore such brand, is not proof that they belonged to H.

5.   An allegaiton in an information charging grand larceny that the property belonged to a certain person is material.

6.   Under Penal Code, Sections 1561, 1569, 1572, permitting conviction in any county into which the guilty person takes stolen property, there is no variance between the venue as laid in an information charging larceny of horses in Cascade county, Montana, and proof that the horses were stolen in Canada, and driven into Cascade county.

7.   Penal Code, Section 1841, Subd. 4, providing that an information is sufficient if it can be understood therefrom that the offense was committed at some place within the jurisdiction of the court, except where the act, though done without the local jurisdiction of the county, is triable therein, has no application to an information charging larceny.

8.   Under Penal Code, Section 1852, the distinction between accessories before the fact and principals is abrogated, and all are treated as principals.

9.   It is improper to charge, in a prosecution for grand larceny, as to accesories after the fact, in the language of Penal Code, Section 1854, in the absence of evidence on which to base such a charge.

10.   Under Code of Civil Procedure, Section 3390, requiring the court on all proper occasions to charge "that a witness false in one part of his testimony is to be distrusted in others," a charge in a prosecution for grand larceny which tells the jury that they have the right to disregard any or all of the testimony of a witness who has willfully and intentionally testi-  fied falsely as to any material matter in the case is erroneous by reason of the omission of the words "except in so far as it is corroborated by other credible evidence."

11.   The right of counsel to appear in a cause is a question of law for the court.
MR. JUSTICE MILBURN dissenting in part.

*Appeal from District Court, Cascade County; J. B. Leslie, Judge.*

PERCY DE WOLFE was convicted of grand larceny. From the judgment, and from an order denying his motion for a new trial, he appeals. Reversed.

*Mr. James W. Freeman,* for Appellant.

*Mr. James Donovan, Attorney General,* for the State.

MR. COMMISSIONER CALLAWAY prepared the opinion for the court.

Percy De Wolfe was convicted of the crime of grand larceny. From the judgment, and an order denying his motion for a new trial, he has appealed.

1.   He was charged with stealing 27 horses branded Bar A P Bar on the left thigh, the property of Albert Lindquist, and 9 horses branded O L on the right shoulder, the property of George Houk. The case came on for trial October 21, 1901. After it was called, counsel for defendant raised the objection, which they said had just come to their notice, that the defendant had never been arraigned on the information; that the information was different from the copy furnished the defendant in two important respects, of which facts they offered to make proof.   The court then, after examining the information and copy, said: "Yes; there is a very material difference in the description of the property. The copy has an impossible time— the 25th of October, 1901. The property described is different, too. Fix them so they will be copies, and let him be arraigned again."   A copy of the information being made, the court directed the defendant to stand, and, after asking him his true name, directed the clerk to read to him the information. This the clerk did, and also gave him a copy thereof. The defendant was then asked if he was ready to enter his plea, to which he answered that he was not, and requested that he be given the statutory time in which to plead, whereupon the court said: "Let the record show that this case was set for trial on this day by an order made on the 27th of September last, and that upon calling the case this morning the parties, both plaintiff and defendant, announced that they were ready for trial, and that this objection was subsequently raised; and we will go on with this case, gentlemen." The trial was proceeded with accordingly. The defendant assigns that such action by the court constituted prejudicial error. We may say parenthetically that the record does not show, except inferentially, that the defendant was ever arraigned prior to the day of the trial, and does not show that any plea was ever entered by him or for him at any time, but does show that he did not enter any plea on the morning of the trial.

Section 1880 of the Penal Code provides that when the information is filed the defendant must be arraigned thereon before the court in which it is filed, unless the cause is transferred to some other county for trial.

Section 1893, *Ib.,* specifies that the arraignment must be made by the court, or by the clerk or county attorney under its direction, and consists in reading the information to the defendant, and delivering to him a copy thereof and of the indorsements thereon, including the list of witnesses, and asking him whether he pleads guilty or not guilty to the information. And "if, on the arraignment, the defendant requires it, he must be allowed a reasonable time, not less than one day, to answer the information." (Section 1895, *Ib.*)

It is apparent that when the defendant came into possession of the copy of the information, which was evidently prior to September 27th, when the order was made setting the cause for trial, he did not receive a true copy, or else the information was afterward changed. He was entitled to rely upon the presumption that the officers of the court had properly performed their official duties, and that the document furnished him, purporting to be a copy of the information, was such in fact. The "copy" meant is, of course, a true copy. His attorneys were entitled to rely upon such presumption, and were under no obligation to make a comparison of the copy with the original. They were justified in preparing to meet the issue charged in the information as shown by the copy, and no other. When the case was called, and they announced themselves ready to proceed, it was to meet the issue charged in the copy in their possession. When they discovered a material discrepancy between the description of the property in the copy and that in the original, they were confronted with an issue they did not expect, and could not have anticipated. The matter being called to the attention of the court, it at once determined that the difference was material—so material that another arraignment was deemed necessary. By taking the action it did, the court indicated that, in its opinion, the defendant had not been arraigned upon the information then on file.

As we have seen, three steps are necessary in an arraignment: The information must be read to the defendant, he must be given a copy thereof, and he must be asked whether he pleads guilty or not guilty to the information. All of these steps are necessary, and must be taken unless expressly waived. The court doubtless thought the first attempt to arraign the prisoner was futile, and, if no copy was given him, its futility is obvious. The arraignment on the morning of the trial was therefore the first arraignment, and it seems to have been properly done; but the defendant, asserting his rights under the statute, required time to plead. He was entitled to at least one day. This the court refused. The defendant was then placed on trial without having pleaded to the information. No issue was joined by him. A trial had when the defendant has neither pleaded to the information, nor had his plea entered for him, is invalid, and a judgment of conviction based thereon will be reversed. (*Territory.* v. *Clayton,* 8 Mont. 1, 19 Pac. 293; *Jackson* v. *State*, 91 Ala. 55, 8 South. 773, 24 Am. St. Rep. 860; *Hill* v. *State*, 1 Yerg. 76, 24 Am. Dec. 441; *Hoskins* v. *People,* 84 Ill. 87, 25 Am. Rep. 433; *Gould* v. *People,* 89 Ill. 216; *Crain* v. *U. S.,* 162 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097; *People* v. *Gaines,* 52 Cal. 479; *People* v. *Monaghan,* 102 Cal. 229, 36 Pac. 511; *Shaw* v. *State,* 17 Tex. App. 225; *State* v. *Cunningham,* 94 N. C. 824; *Davis* v. *State,* 38 Wis. 487.)

2. The state undertook to prove that the horses were stolen in pursuance of a conspiracy entered into between Jack Edmiston, Frank Smith and defendant. During the trial witnesses were allowed to testify to statements made by Edmiston and Smith. Defendant objected to much of this testimony, and excepted to the rulings of the court thereon. As this case must be remanded for a new trial, it is unnecessary to discuss such alleged errors. The trial court was mindful of the rule that evidence of what was said and done by defendant's co-conspirators must be confined to their acts and declarations made and done while the conspiracy was pending, and in furtherance of it, and will doubtless again apply it upon another trial.

3.   At the conclusion of the state's case the defendant moved · to strike out all of the testimony with reference to the O L horses, on the ground that the state had not proved the ownership of such horses. The court overruled the motion. We have examined the record, and think the motion should have been sustained. No one testified that the O L horses described in the information were the property of George Houk. Houk does not seem to have been present at the trial. The witnesses Wagner and Fox testified that they saw O L horses in the herd driven away by Edmiston and Smith, and said they knew the O L brand, and that it belonged to George Houk. The fact that the O L brand belonged to Houk, and that the horses bore such brand, was not proof that they belonged to Houk at the time they were driven away, or that defendant was not rightfully in possession of them. The allegation that the horses were the property of George Houk was material, and it was incumbent upon the state to prove it beyond a reasonable doubt.

4.   At the close of the state's case the defendant moved the court to discharge the jury on the ground that there was a variance between the venue as laid in the information and the proof.

The state proved that the Bar A P Bar horses were stolen in the Dominion of Canada, near the Montana line, and were then driven to Great Falls, in Cascade county, Montana, where they were disposed of. Defendant contends that when a larceny is committed outside of the local jurisdiction of a county, but is triable therein, "the facts showing where the larceny was committed should be stated in the body of the information." No contention is made that the offense is not triable in Cascade county, nor does it seem that such contention could be sustained under the provisions of Sections 1561, 1569 and 1572 of the Penal Code. These sections read as follows:

"Sec. 1561.   When the commission of a public offense, commenced without the state, is consummated within its boundaries, the defendant is liable to punishment therefor in this state though he was out of the state at the time of the commission of the offense charged. If he consummated it in this state,

through the intervention of an innocent or guilty agent, or any other means proceeding directly from himself, in such case the jurisdiction is in the county in which the offense is consummated."

"Sec. 1569.   When property taken in one county by burglary, robbery or larceny, has been brought into another, the jurisdiction of the offense is in either county.   But if at any time before the conviction of the defendant in the latter, he is indicted in the former county, the sheriff of the latter county must, upon demand, deliver him to the sheriff of the former."

"Sec. 1572.   The jurisdiction of a criminal action for stealing in any other state the property of another, or receiving it, knowing it to have been stolen, and bringing the same into this state, is in any county into or through which such stolen property has been brought.".

Under these statutes, one who commits larceny may be convicted of that crime in any county into which he takes the stolen property, on the theory that, "since larceny consists of any asportation of the goods of another through trespass by one who simultaneously means to steal them, the complete offense is committed in every locality in which such asportation, trespass and attempt to steal occur." (Bishop's Directions & Forms, Sec. 607; *State* v. *Kief,* 12 Mont. 92, 29 Pac. 654, 15 L. R. A. 722.)

Under a section similar to 1569, *supra,* it has been repeatedly held that informations for larceny should lay the venue in the county in which the offense is to be tried.   It is unnecessary to refer to the place in which the stolen property was originally taken, or to allege what took place therein.   Such matter is evidentiary, and may be proved without an allegation of prior occurrences.   (*Haskins* v. *People,* 16 N. Y. 348; *State* v. *Brown,* 8 Nev. 208; *People* v. *Mellon,* 40 Cal. 648; *People* v. *Scott,* 74 Cal. 94, 15 Pac. 384; *People* v. *Staples,* 91 Cal. 23, 27 Pac. 523.)

The defendant says that Subdivision 4 of Section 1841 indicates a different procedure.   The language relied on is: "The

information is sufficient, if it can be understood therefrom:
(4) That the offense was committed at some place within the
jurisdiction of the court, except where the act, though done
without the local jurisdiction of the county, is triable therein."
This does not refer to larceny, because in a case like the pres-
ent the act was committed within, as well as without, the local
jurisdiction of the county. The subdivision *supra* undoubt-
edly applies to the two other crimes—burglary and robbery—
mentioned in Section 1569, *supra,* because those offenses are
not continuing offenses, as larceny may be. They are neces-
sarily completed at some certain place and time, being essen-
tially local offenses. If property be taken by burglary in one
county and brought into another, the jurisdiction of the offense
of burglary is in either county, but the act of burglary is ordi-
narily consummated in one county only. Bringing the property
into the other county gives that county jurisdiction.. (*Haskins*
v. *People, supra; People* v. *Scott, supra.*)

5.   The defendant insists that several of the instructions are
erroneous. In No. 5 the jury was told: "If you shall believe
from the evidence, beyond all reasonable doubt, that the said
defendant, Percy De Wolfe, in conjunction with the said Jack
Edmiston, or by himself, at the county of Cascade and state of
Montana, and on or about the 25th day of October, 1900, did
then and there willfully, unlawfully and feloniously steal, take
and carry away the said horses described in the information, be-
longing to the said Albert Lindquist, and branded Bar A P Bar
on the left thigh, and the said nine head of horses branded O L
on the right shoulder, being the property of one George Houk,
or any of said horses, and the said defendant then and there
having the intent to willfully, unlawfully and feloniously de-
prive the said owner or owners of their said property, it will
be your duty to find the defendant guilty as charged in the in-
formation." As we have previously observed, there was no evi-
dence whatever concerning the ownership of the O L horses, and
the court should not have referred to them in this instruction.
This same criticism is applicable to instruction No. 13.

6. In instruction No. 7 the court correctly told the jury that "in this state the distinction between an accessory before the fact and the principal, and between principals in the first and second degree, in cases of felony, is abrogated; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, must be prosecuted, tried and punished as principals, and no other facts need be alleged or proved under an information against such accessory than are required under an information against his principal," and then gave the jury instruction No. 8, which reads: "You are instructed that an accessory to the commission of a felony may be prosecuted, tried and punished, though the principal may be neither prosecuted nor tried." Instruction No. 7 is practically in the language of Section 1852 of the Penal Code. The words "such an accessory," as used in that section, clearly refer to the words "an accessory before the fact," used in the opening sentence thereof.

Instruction No. 8 is a quotation from Section 1854 of the Penal Code, which manifestly refers to an accessory after the fact, as the term was formerly employed. We find by reference to Section 40 of the Penal Code that the parties to crimes are classified as principals and accessories. Section 41 defines who are principals, while Section 42 prescribes "that all persons who, after full knowledge that a felony has been committed, conceal it from the magistrate, or harbor or protect the person charged with or convicted thereof, are accessories." It thus appears that accessories to crime are still recognized as punishable under our law, but the accessories referred to in the statute are accessories after the fact. Accessories before the fact are treated as principals. There was no evidence whatever upon which to base instruction No. 8. If the defendant was guilty at all, he was guilty as principal. It was not pretended that he either concealed the crime from a magistrate, or harbored or protected any person charged with, or convicted thereof. Instructions must be warranted by the evidence. (*Yoder* v. *Reynolds,* 28 Mont. 183, 72 Pac. 417, and cases cited.)

The impropriety of giving instruction No. 8 becomes more apparent when we consider that the defendant was tried for grand larceny, which is punishable by imprisonment in the state prison for not less than one nor more than fourteen years (Section 885, Penal Code), while, "except in cases where a different punishment is prescribed, an accessory is punishable by imprisonment in the state prison not exceeding five years, or in a county jail not exceeding two years, or by fine not exceeding five thousand dollars." (Section 43, Penal Code.)

It is probable that the jury was not misled by instruction No. 8, for the reason that the only "accessory" the instructions informed them of was the "accessory before the fact" mentioned in instruction 7; but as the matter is before us for review, and as the case is to be remanded, it is proper to call attention to the distinction between Sections 1852 and 1854, *supra,* to the end that errors with reference to them may be avoided in the future.

7. Instruction No. 20 reads, "If you believe that any witness who has testified in this case has willfully and intentionally testified falsely as to any material matter in the case, the jury have a right to disregard any or all of the testimony of such witness." Defendant says the court should have added thereto the words "except in so far as it is corroborated by other credible evidence," and in this we think he is correct, under the former decisions of this court. Section 3390, Code Civil Procedure, which is applicable to this case, prescribes that the jury are to be instructed by the court, on all proper occasions, "that a witness false in one part of his testimony is to be distrusted in others."

In *Cameron* v. *Wentworth,* 23 Mont. 70, 57 Pac. 648, the court said: "It is undoubtedly the rule that, where a witness has willfully sworn falsely as to any material matter upon the trial, the jury is at liberty to discard his entire testimony, except in so far as it has been corroborated by other credible evidence." And again, commenting on Section 3390, it is said: "As a statute affecting the province of the jury in weighing

evidence, it requires them to view with distrust the testimony of a witness who willfully swears falsely as to a material matter. They must distrust such a witness, and, under their general power of passing upon the credibility to be attached to each witness, they may disregard such testimony entirely, except in so far as it is corroborated by other credible evidence. *People v. Durant,* 116 Cal. 179, 48 Pac. 75." The same rule is announced in *Bonnie v. Earll,* 12 Mont. 239, 29 Pac. 882.

8. At the beginning of the trial the county attorney requested that Mr. W. G. Downing be entered as associate counsel for the state. This the court permitted over defendant's objection. After some discussion upon another point, the court said: "I believe I will require Mr. Downing to state upon what basis he appears in this case, and let the record show it," to which that gentleman replied, "If the court please, I have been employed by the state board of stock commissioners in this case." Upon this state of facts, the court gave the jury instruction No. 1, which reads as follows: "The jury are further instructed that, under the provisions of the statutes of this state, it is the duty of the board of stock commissioners to exercise a general supervision over, and, so far as may be, protect the stock interests of the state from theft and disease; and they may take all necessary and lawful steps, procure all necessary and proper process for the attendance of witnesses, and employ counsel to assist in the prosecution of any person; and it is further made the duty of the board of stock commissioners, when necessary, to assist the prosecution of any person guilty of any offense against the laws of this state, in feloniously branding or stealing any stock or any other crime, or misdemeanor, under any of the laws of the state for protection of the rights and interests of stock owners."

The right of Mr. Downing to appear was a question of law for the court, and was a matter with which the jury had nothing to do. There was no evidence before them that he was employed by the board of stock commissioners. His statement was to the court, and before the jury was impaneled. This instruc-

tion, therefore, is not based upon any evidence in the case. But it is objectionable from any point of view. The jury were told that it is the duty of the board of stock commissoners to employ counsel to assist the prosecution of any person *guilty* of any offense against the laws of the state in, feloniously branding or stealing any stock. In effect, the instruction told the jury that the gentlemen comprising the board of stock commissioners had satisfied themselves that the defendant was guilty of the crime charged in the information, and therefore had employed counsel to assist in the prosecution.

We do not find any merit in any of the other alleged errors pointed out by defendant.

For the foregoing reasons, we are of the opinion that the judgment and order should be reversed, and the cause remanded for a new trial.

PER CURIAM.—For the reasons given in the foregoing opinion, the judgment and order are reversed, and the cause remanded for a new trial.

MR. JUSTICE MILBURN: I concur specially. I do not agree with what is said in the opinion in regard to what it is necessary to allege in the information, and prove on the trial, when a party is to be charged with larceny under the provisions of the statute making it larceny, under the law of Montana, to bring into and have in the state of Montana property stolen without the state. I believe, in such a case, that the information should pursue the language of the statute, and recite the facts necessary to bring it within the provisions of the statute; one important one being that the property was stolen outside of Montana.

The case of *State* v. *Kief,* 12 Mont. 92 (29 Pac. 654, 15 L. R. A. 722), cited in the opinion, is not authority for any other conclusion. At page 98 of that case the court cites Mr. Bishop; the learned writer saying: "Where, as in some states, there is a statute on the subject, its terms will, *of course* [italics mine. G. R. M.], if

it is the foundation of the proceeding, be pursued." The indictment in the *Kief Case,* as the court states ofter the citation from Mr. Bishop, alleged that Kief "did feloniously steal, take and carry away" the property of one Mitchell, within the Dominion of Canada, and bring the same into the county of Dawson, in the state of Montana.

My belief is that the conclusion of the court that it was not necessary to show that the taking in the foreign state or country was unlawful is erroneous and illogical. I say this respectfully, and with less hesitation than I otherwise would, when I consider that the court said, "We confess that the authorities cannot be reconciled, and that the question is environed by extreme difficulties;" and further when I find in the opinion several quotations from courts of high standing *contra* to the conclusion reached.

The short dissenting opinion of Mr. Justice De Witt in the *Kief Case* is better supported on principle and by authority, in my opinion, than that of the majority of the court. The contention of the appellant in the case before us is stronger than that of the respondent in the case of *State* v. *Kief,* for the reason that the indictment against the respondent in that case was drawn with actual reference to the language of the statute, and all of it, whereas the information in the case at bar simply states that the property was stolen, taken and carried away in the county of Cascade.

Not being satisfied with the correctness of the views expressed in the opinion in this case upon the subject referred to, I dissent as to them; being inclined to the belief that the contention of the appellant as to the information and the insufficiency of the proof under it is correct.