STATE, RESPONDENT, *v.* WILLETTE, APPELLANT.

(No. 3,189.)

(Submitted October 30, 1912. Decided November 14, 1912.)

[127 Pac. 1013.]

*Criminal Law—Grand Larceny—Livestock—Bringing Stolen Property into State—Information—Sufficiency—Evidence— Res Gestae—Impeaching Own Witness—Possession of Stolen Property—Burden of Proof.*

Grand Larceny—Bringing Stolen Property into State—Information— Sufficiency.

1. In a prosecution under section 8655, Revised Codes, making punishable as larceny the bringing into this state of personal property stolen in another state or country, the information need not allege when and where the taking actually occurred, such matters being evidentiary and open to proof without specific allegation; the charge is sufficient if it be the same in form as for a larceny committed in this state.

Same—Livestock—Evidence—Admissibility—Res Gestae.

2. Evidence that a saddle, belonging to the complaining witness in the prosecution for the larceny of a horse, and taken at the same time the animal was stolen, had been bought from defendant with the horse was admissible as a part of the *res gestae.*

Same—Impeaching One's Own Witness—When Permissible.

3. Under section 8022, Revised Codes, the state may, where circumstances arising in the course of a trial of a criminal cause require it in order to protect its rights, as where one of its witnesses and the defendant are shown to have been on terms of friendly intimacy, *etc.,* propound to such witness questions of an impeaching character.

Same—Declarations—Admissibility.

4. Testimony of the sheriff that while on his way to the county jail with defendant under arrest the latter stated that he would "get even with the s—— o—— b——s," *held* competent to go to the jury for their determination whether the statement implied a sense of resentment for what was deemed by him to be an unwarranted arrest, or a consciousness of guilt.

Same—Burden of Proof.

5. Mere possession of personal property by a defendant soon after it has been stolen is not sufficient in itself to justify his conviction of larceny; if, however, such possession is supplemented by circumstances which, left unexplained, tend to show that it is felonious, the burden is cast upon him to adduce evidence to rebut the *prima facie* case thus made out against him.

Same—Possession of Stolen Property—Explanatory Testimony—Sufficiency —Jury Question.

6. After a *prima facie* case of guilt in a prosecution for grand larceny was made, the mere fact that the testimony introduced by defendant explanatory of his possession of the stolen property was unimpeached did not alone entitle him to an acquittal, where such evidence, though not directly impeached, was inherently improbable when examined in

the light of other facts and circumstances appearing in the trial; the credibility of such explanatory testimony was for the jury's determination.

*Appeal from District Court, Valley County; Frank N. Utter, Judge.*

ISADORE WILLETTE was convicted of the crime of grand larceny, and appeals from the judgment of conviction and an order denying him a new trial. Affirmed.

*Mr. R. E. O'Keefe,* for Appellant, submitted a brief and argued the cause orally.

*Mr. Albert J. Galen,* Attorney General, and *Mr. W. S. Towner,* Assistant Attorney General, submitted a brief in behalf of the State.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The defendant was convicted of the crime of grand larceny and sentenced to a term of fourteen years in the state prison. He has appealed from the judgment and an order denying his motion for a new trial. The information is in the ordinary form, charging larceny of a gelding in Valley county, Montana, on or about August 1, 1911.

1. It appeared from the evidence that the animal in controversy was stolen from one Sullivan at Gillette, in Cook county, in the state of Wyoming, and that it was found in defendant's possession in Valley county at or about the time charged. The contention is made by counsel for defendant that the court erred in refusing to exclude all evidence tending to show a taking at any place outside of the state of Montana. The theory of counsel is that, though the defendant was properly chargeable in Valley county, since the stolen animal was shown to have been brought by him into that county and was found there, it was incumbent upon the county attorney to allege the particular circumstances of time, place, *etc.*, showing when and where the original larceny was committed. Section 8655 of the Revised Codes

[1]    declares: "Every person who, in another state or country, steals the property of another, or receives such property knowing it to have been stolen, and brings the same into this state, may be convicted and punished in the same manner as if such larceny or receiving had been committed in this state." By enacting this provision, the legislature evidently intended to denounce and punish as larceny the bringing into this state of personal goods stolen in another country or state. As pointed out in *People* v. *Black,* 122 Cal. 73, 54 Pac. 385, any fair construction of it leads to the conclusion that the form of the accusation and the penalty to be imposed upon conviction were intended to be the same as in case of larceny committed wholly within this state. That this is so seems clear from the use of the expression "convicted and punished in the same manner as if such larceny had been committed in this state." The word "punished" refers to the penalty; but the word "convicted," in the connection in which it is found, is broad enough to include the accusation and trial. If this is the correct view—and we think it is—it must follow that the form of the charge may be the same as for a larceny in this state. If the defendant was guilty of any crime against the law of this state, it was the larceny of the animal in this state; and, though it was necessary to show on the trial the felonious taking in Wyoming in order to prove the character of his possession in this state, it was not necessary to allege it. This would have been an allegation of matter which is wholly evidentiary. (*Morrissey* v. *People,* 11 Mich. 327.) There is some conflict in the decisions upon the subject, but the weight of authority predominates in favor of the conclusion we have stated. "The just form of the allegation, correct in principle, convenient and common, is to lay the offense simply in the county of the prosecution, with no reference to anything done elsewhere. If transactions elsewhere are important, it is sufficient for them to appear in the evidence." (2 Bishop on New Criminal Procedure, sec. 727.) The rule, as stated by Mr. Bishop, was recognized in this state by the decision in *State* v. *De Wolfe,* 29 Mont. 415, 74 Pac. 1084, where it is said: "It is unnecessary to refer to the place in which the stolen property was originally taken, or to allege what

took place therein. Such matter is evidentiary, and may be proved without an allegation of prior occurrences." (See, also, *People* v. *Mellon,* 40 Cal. 648; *Watson* v. *State,* 36 Miss. 593; *Commonwealth* v. *Dewitt,* 10 Mass. 154; *Haskins* v. *People,* 16 N. Y. 344; *State* v. *Smith,* 66 Mo. 61; *People* v. *Burke,* 11 Wend. (N. Y.) 129.)

2. It appeared from the testimony of Sullivan that a [2] saddle belonging to him and taken at the same time the horse was taken was found by him in the possession of one Albert Kirn, in Valley county. George Kirn, a witness produced by the state, testified that he had bought both horse and saddle from the defendant on the 4th or 5th of August, 1911, at his place, also in Valley county, where the defendant had stopped for the night; that he had thereafter let his brother have the saddle, and that Stephens, the sheriff, and Sullivan had taken it from the possession of the latter about the time they reclaimed and took the horse. This evidence was admitted over the objection of counsel that it was incompetent, in that it was proof of a circumstance relating to an offense not charged in the information. Error is assigned upon this ruling. The evidence was competent, for it was part of the transaction, a part of the *res gestae,* and inseparably connected with the larceny of the horse. (*State* v. *Shafer,* 26 Mont. 11, 66 Pac. 463; 12 Cyc. 406.)

The witness Kirn was asked whether or not, when Stephens and Sullivan reclaimed the horse, he did not say to Stephens, in response to an inquiry touching the execution of a bill of sale by defendant: "He made out a bill of sale with somebody's name besides his own, but I don't remember the name; it looked to me like there was something wrong about it, and I did not want the bill of sale that way." The witness denied that he made that or any similar statement. He stated: "The only bill of sale I remember is the one I was telling you about—the one Glenn Robinson made out. This bill of sale from Glenn Robinson was for two other horses I bought from my man [who] was working for me. Those were other horses than this entirely." This course of inquiry was pursued professedly for the [3] purpose of laying a foundation for impeaching the witness.

The evidence was admitted over the objection of counsel for defendant that it was not competent for the state to impeach its own witness, and that the statement, not appearing to have been made in the presence of defendant, was hearsay. Later Stephens was permitted to testify, over objection on the same ground, that Kirn had made the statement embodied in the question put to him. Error is assigned upon these rulings.

Section 8022, Revised Codes, provides: "The party producing a witness is not allowed to impeach his credit by evidence of bad character, but he may contradict him by other evidence, and may also show that he has made at other times statements inconsistent with his present testimony, as provided in section 8025." In *State* v. *Bloor,* 20 Mont. 574, 52 Pac. 611, this court, in considering this provision, said: "We believe that, under the express terms of this statute, the state has a right to cross-examine one of its own witnesses where it satisfactorily appears that the evidence has taken the county attorney by surprise, and is contrary to the examination of such witness preparatory to the trial, or to what the prosecuting attorney has reason to believe the witness would testify to. It not infrequently happens that a witness is brought under the influence of an adverse party, and upon the trial completely deceives the party calling him. When such instances arise in criminal cases, by the great weight of authority, the right to cross-examine arises as one necessary for the protection of the rights of the state against the perjury or evasion of an unwilling witness." The admission of such evidence is always attended by the danger that the declaration testified to by the impeaching witness will be accepted as independent evidence of the statement of fact embodied in it. (Greenleaf on Evidence, sec. 444.) Nevertheless the statute declares it admissible whenever the circumstances arising in the case create a demand for it in order to protect the rights of the party producing the witness. It appeared that the witness and the defendant were on terms of friendly intimacy. Upon the record, therefore, we cannot say that the court abused its discretion in making the rulings in question. An instruction limiting the purpose for which the evidence was admitted would

have been proper. No request was made in this behalf, however. In the absence of such a request, the court cannot be put in error for neglecting to give it.

It appears that the defendant was arrested by the sheriff at Poplar, on the line of the Great Northern Railway in Valley [4] county. The defendant was at the station when the train came in from the west. Having seen the sheriff on the train, he endeavored to escape his notice by running rapidly away. He was thereupon pursued and arrested. A few minutes later one Glenn Robinson was also arrested. The sheriff, being on his way to Culbertson, in the eastern part of the county, took both prisoners with him on the train and thereafter returned with them to Glasgow, the county seat. On the way to Culbertson, the defendant stated to Robinson, in the hearing of the sheriff: "I guess I'll get about ten years for this, but if I ever get out, I'll get even with the s—— o—— b——s." The sheriff was permitted to testify to the statement, over objection, that it did not appear to be connected in any way with the arrest of the defendant upon the charge preferred in this case, and was therefore immaterial. It is true, as counsel says, that the sheriff did not at that time inform the defendant of the charge against him; that he did not even have a warrant. Yet it does not appear that there was any other charge upon which the defendant was liable to arrest. The inference from the facts appearing in the record is that there was not. The statement was evidently induced by the arrest. Under the circumstances, it was competent to go to the jury, and it was for them to determine whether it implied a sense of resentment for what the defendant took to be an unwarranted arrest, with the attendant inconvenience resulting therefrom to him or whether it implied a consciousness of guilt. (*State* v. *Lucey,* 24 Mont. 295, 61 Pac. 994.) There was no error in the ruling.

3. While counsel admits, or rather does not question, the sufficiency of the evidence introduced by the state to make out a *prima facie* case of guilt, he argues earnestly that, since the evidence introduced by the defendant, explanatory of his possession of the stolen animal, is unimpeached and is worthy of credit,

.the defendant was entitled to an acquittal. The circumstances pointing to defendant's guilt may be summarized as follows: The home of defendant is in Valley county. For two months .prior to the 10th of July, 1911, he had been working on a ranch near Gillette, Cook county, Wyoming. About July 15th he was seen at Gillette by the witness Sullivan, who then had the horse picketed on some vacant lots adjacent to his residence. The saddle was in his barn. During the night the defendant disappeared, as did also the horse and saddle. Sullivan did not thereafter know of their whereabouts until he learned through information obtained from the sheriff of Valley county, Montana. As already detailed, he and the sheriff found the horse in the possession of George Kirn, and the saddle in the possession of the brother, Albert, in the early days of August. At that time the brand on the horse had been vented by a bar run through it. This had been done by the defendant at Kirn's request at the time the sale was made to him. It bore evidence, also, of having been altered prior to this time, and after it had disappeared from the possession of Sullivan. No explanation of this was made by the defendant or anyone else. To this may be added the conduct and declaration of the defendant at the time of his arrest. The defendant undertook to explain his possession of the horse by his own testimony and that of one Ottenstror. The two had gone together from Valley county to Gillette in April or May, 1911. Both told the same story, *viz.*, that they left Gillette about July 10, making their way to Billings, Montana, on freight trains, spending two days on the way; that two days later they went to Miles City, Montana, traveling as before; .that the defendant, about August 1 purchased the horse and saddle for $125 from some person he did not know; that Ottenstror also purchased a horse; and that the two then traveled across the country on horseback to Valley county to Kirn's place. The defendant stated further that he sold the horse and saddle to Kirn on the day after his arrival, and thereupon, having started for .Culbertson, was arrested at Poplar. According to the statement of both witnesses, they made their purchases at a livery barn in Miles City. They both knew the name of the proprietor.

Several persons were present at the time; some of whom were known by name to the defendant. No witness from among these persons was called to corroborate the story told by them. That the horse was stolen from Sullivan by someone does not admit of doubt. The mere possession of property by a defendant soon [5] after it has been stolen is not sufficient of itself to justify his conviction. (*Territory* v. *Doyle,* 7 Mont. 245, 14 Pac. 671; *State* v. *Sullivan,* 9 Mont. 174, 22 Pac. 1088.) Yet when this fact is supplemented by circumstances which, left unexplained, tend to show that the possession is felonious, the burden is then cast upon the defendant to adduce evidence to rebut the *prima facie* case thus made out against him. If the evidence adduced by him is satisfactory to the jury, or sufficient to raise in their minds a reasonable doubt of his guilt, he is entitled to an acquittal. In a given case, the explanatory evidence may be so clear and satisfactory as to justify the court in advising or directing an acquittal. But, speaking generally, the evidence in such cases presents a question of the credibility of the testimony of the defendant himself or of the witnesses testifying in his behalf, which it is the exclusive province of the jury to determine. It will not do to say that the court or jury must accept the explanatory statement of the defendant or his witnesses as conclusive. [6] Though the statements may not be directly contradicted or impeached, yet they may be inherently improbable when examined in the light of other facts and circumstances admitted or proven. (*Mattock* v. *Goughnour,* 11 Mont. 265, 28 Pac. 301; *State* v. *Trosper,* 41 Mont. 442, 109 Pac. 858; *Quock Ting* v. *United States,* 140 U. S. 417, 35 L. Ed. 501, 11 Sup. Ct. Rep. 733; 25 Cyc. 138; 12 Cyc. 486.) It is true, as counsel says, that the statements of the defendant and Ottenstror as to the purchase in Miles City are not contradicted by the statement of any other witness. Yet the fact that Ottenstror was defendant's intimate and companion throughout, that no other witness was produced to testify as to their presence in Miles City and the purchases which they claim to have made there, and that defendant's conduct at the time of his arrest was such as to justify an inference of conscious guilt on his part, so far discredited these statements

as to warrant the jury in disregarding them if they did not believe them. The demeanor of the witnesses in delivering their testimony may have been such as, in the judgment of the jury, rendered them unworthy of credit.

Some reference is made by counsel to the severity of the penalty imposed by the district judge. This feature of the case cannot be considered by this court. If defendant has suffered wrong in this behalf, he must apply for relief to the executive department of the government, which alone is vested with power to grant a commutation of sentence or a pardon.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.